## MURPHY v. UNITED PARCEL SERVICE, INC.

No. 97–1992.   Argued April 27, 1999—Decided June 22, 1999

O'CONNOR, J., delivered the opinion of the Court, in which REHNQUIST, C. J., and SCALIA, KENNEDY, SOUTER, THOMAS, and GINSBURG, JJ., joined. STEVENS, J., filed a dissenting opinion, in which BREYER, J., joined, *post*, p. 525.

*Stephen R. McAllister* argued the cause for petitioner. With him on the briefs was *Kirk W. Lowry.*

*James A. Feldman* argued the cause for the United States et al. as *amici curiae* urging reversal. With him on the

brief were *Solicitor General Waxman, Acting Assistant Attorney General Lee, Deputy Solicitor General Underwood, Jessica Dunsay Silver, Seth M. Galanter, C. Gregory Stewart, Philip B. Sklover,* and *Carolyn L. Wheeler.*

*William J. Kilberg* argued the cause for respondent. With him on the brief were *Thomas G. Hungar, Brian J. Finucane,* and *James R. Holland II.\**

JUSTICE O'CONNOR delivered the opinion of the Court.

Respondent United Parcel Service, Inc. (UPS), dismissed petitioner Vaughn L. Murphy from his job as a UPS mechanic because of his high blood pressure. Petitioner filed suit under Title I of the Americans with Disabilities Act of 1990 (ADA or Act), 104 Stat. 328, 42 U. S. C. § 12101 *et seq.,* in Federal District Court. The District Court granted summary judgment to respondent, and the Court of Appeals for the Tenth Circuit affirmed. We must decide whether the Court of Appeals correctly considered petitioner in his medicated state when it held that petitioner's impairment does

---

*Briefs of *amici curiae* urging reversal were filed for the State of Massachusetts et al. by *Thomas F. Reilly,* Attorney General of Massachusetts, *Catherine C. Ziehl,* Assistant Attorney General, *Darrell V. McGraw,* Attorney General of West Virginia, and *Mary C. Buchmelter,* Deputy Attorney General, and by the Attorneys General for their respective States as follows: *Janet Napolitano* of Arizona, *Bill Lockyer* of California, *M. Jane Brady* of Delaware, *Alan G. Lance* of Idaho, *James E. Ryan* of Illinois, *Carla J. Stovall* of Kansas, *Joseph P. Mazurek* of Montana, and *Patricia A. Madrid* of New Mexico; for the American Diabetes Association by *Michael A. Greene;* for the National Employment Lawyers Association by *Gary Phelan* and *Paul A. Brantner;* and for Senator Harkin et al. by *Arlene B. Mayerson.*

Briefs of *amici curiae* urging affirmance were filed for the American Trucking Association et al. by *James D. Holzhauer, Timothy S. Bishop, Robert Digges, Jan Amundson,* and *Quentin Riegel;* for the Equal Employment Advisory Council et al. by *Ann Elizabeth Reesman, Corrie L. Fischel, Stephen A. Bokat, Robin S. Conrad,* and *J. Walker Henry;* and for the Society for Human Resource Management by *Peter J. Petesch, Thomas J. Walsh, Jr., Timothy S. Bland,* and *David S. Harvey, Jr.*

not "substantially limi[t]" one or more of his major life activities and whether it correctly determined that petitioner is not "regarded as disabled." See § 12102(2). In light of our decision in *Sutton* v. *United Air Lines, Inc., ante,* p. 471, we conclude that the Court of Appeals' resolution of both issues was correct.

I

Petitioner was first diagnosed with hypertension (high blood pressure) when he was 10 years old. Unmedicated, his blood pressure is approximately 250/160. With medication, however, petitioner's "hypertension does not significantly restrict his activities and . . . in general he can function normally and can engage in activities that other persons normally do." 946 F. Supp. 872, 875 (Kan. 1996) (discussing testimony of petitioner's physician).

In August 1994, respondent hired petitioner as a mechanic, a position that required petitioner to drive commercial motor vehicles. Petitioner does not challenge the District Court's conclusion that driving a commercial motor vehicle is an essential function of the mechanic's job at UPS. *Id.,* at 882–883. To drive such vehicles, however, petitioner had to satisfy certain health requirements imposed by the Department of Transportation (DOT). 49 CFR § 391.41(a) (1998) ("A person shall not drive a commercial motor vehicle unless he/she is physically qualified to do so and . . . has on his/her person . . . a medical examiner's certificate that he/she is physically qualified to drive a commercial motor vehicle"). One such requirement is that the driver of a commercial motor vehicle in interstate commerce have "no current clinical diagnosis of high blood pressure likely to interfere with his/her ability to operate a commercial vehicle safely." § 391.41(b)(6).

At the time respondent hired him, petitioner's blood pressure was so high, measuring at 186/124, that he was not qualified for DOT health certification, see App. 98a–102a (Department of Transportation, Medical Regulatory Criteria for Evaluation Under Section 391.41(b)(6), attached as exhibit to

Affidavit and Testimony of John R. McMahon) (hereinafter Medical Regulatory Criteria). Nonetheless, petitioner was erroneously granted certification, and he commenced work. In September 1994, a UPS medical supervisor who was reviewing petitioner's medical files discovered the error and requested that petitioner have his blood pressure retested. Upon retesting, petitioner's blood pressure was measured at 160/102 and 164/104. See App. 48a (testimony of Vaughn Murphy). On October 5, 1994, respondent fired petitioner on the belief that his blood pressure exceeded the DOT's requirements for drivers of commercial motor vehicles.

Petitioner brought suit under Title I of the ADA in the United States District Court for the District of Kansas. The court granted respondent's motion for summary judgment. It held that, to determine whether petitioner is disabled under the ADA, his "impairment should be evaluated in its medicated state." 946 F. Supp., at 881. Noting that when petitioner is medicated he is inhibited only in lifting heavy objects but otherwise functions normally, the court held that petitioner is not "disabled" under the ADA. *Id.,* at 881–882. The court also rejected petitioner's claim that he was "regarded as" disabled, holding that respondent "did not regard Murphy as disabled, only that he was not certifiable under DOT regulations." *Id.,* at 882.

The Court of Appeals affirmed the District Court's judgment. 141 F. 3d 1185 (CA10 1999) (judgt. order). Citing its decision in *Sutton* v. *United Air Lines, Inc.,* 130 F. 3d 893, 902 (CA10 1997), aff'd, *ante,* p. 471, that an individual claiming a disability under the ADA should be assessed with regard to any mitigating or corrective measures employed, the court held that petitioner's hypertension is not a disability because his doctor had testified that when petitioner is medicated, he "'functions normally doing everyday activity that an everyday person does.'" App. to Pet. for Cert. 4a. The court also affirmed the District Court's determination that petitioner is not "regarded as" disabled under the ADA. It

explained that respondent did not terminate petitioner "on an unsubstantiated fear that he would suffer a heart attack or stroke," but "because his blood pressure exceeded the DOT's requirements for drivers of commercial vehicles." *Id.*, at 5a. We granted certiorari, 525 U. S. 1063 (1999), and we now affirm.

## II

The first question presented in this case is whether the determination of petitioner's disability is made with reference to the mitigating measures he employs. We have answered that question in *Sutton* in the affirmative. Given that holding, the result in this case is clear. The Court of Appeals concluded that, when medicated, petitioner's high blood pressure does not substantially limit him in any major life activity. Petitioner did not seek, and we did not grant, certiorari on whether this conclusion was correct. Because the question whether petitioner is disabled when taking medication is not before us, we have no occasion here to consider whether petitioner is "disabled" due to limitations that persist despite his medication or the negative side effects of his medication. Instead, the question granted was limited to whether, under the ADA, the determination of whether an individual's impairment "substantially limits" one or more major life activities should be made without consideration of mitigating measures. Consequently, we conclude that the Court of Appeals correctly affirmed the grant of summary judgment in respondent's favor on the claim that petitioner is substantially limited in one or more major life activities and thus disabled under the ADA.

## III

The second issue presented is also largely resolved by our opinion in *Sutton*. Petitioner argues that the Court of Appeals erred in holding that he is not "regarded as" disabled because of his high blood pressure. As we held in *Sutton*, *ante*, at 489, a person is "regarded as" disabled within the

meaning of the ADA if a covered entity mistakenly believes that the person's actual, nonlimiting impairment substantially limits one or more major life activities. Here, petitioner alleges that his hypertension is regarded as substantially limiting him in the major life activity of working, when in fact it does not. To support this claim, he points to testimony from respondent's resource manager that respondent fired petitioner due to his hypertension, which he claims evidences respondent's belief that petitioner's hypertension—and consequent inability to obtain DOT certification—substantially limits his ability to work. In response, respondent argues that it does not regard petitioner as substantially limited in the major life activity of working but, rather, regards him as unqualified to work as a UPS mechanic because he is unable to obtain DOT health certification.

As a preliminary matter, we note that there remains some dispute as to whether petitioner meets the requirements for DOT certification. As discussed above, petitioner was incorrectly granted DOT certification at his first examination when he should have instead been found unqualified. See *supra*, at 519–520. Upon retesting, although petitioner's blood pressure was not low enough to qualify him for the 1-year certification that he had incorrectly been issued, it was sufficient to qualify him for optional temporary DOT health certification. App. 98a–102a (Medical Regulatory Criteria). Had a physician examined petitioner and, in light of his medical history, declined to issue a temporary DOT certification, we would not second-guess that decision. Here, however, it appears that UPS determined that petitioner could not meet the DOT standards and did not allow him to attempt to obtain the optional temporary certification. *Id.*, at 84a–86a (testimony of Monica Sloan, UPS' company nurse); *id.*, at 54a–55a (testimony and affidavit of Vaughn Murphy). We need not resolve the question whether petitioner could meet the standards for DOT health certification, however, as it goes only to whether petitioner is qualified

and whether respondent has a defense based on the DOT regulations, see *Albertson's, Inc.* v. *Kirkingburg, post,* p. 555, issues not addressed by the court below or raised in the petition for certiorari.

The only issue remaining is whether the evidence that petitioner is regarded as unable to obtain DOT certification (regardless of whether he can, in fact, obtain optional temporary certification) is sufficient to create a genuine issue of material fact as to whether petitioner is regarded as substantially limited in one or more major life activities. As in *Sutton, ante,* at 491–492, we assume, *arguendo,* that the Equal Employment Opportunity Commission (EEOC) regulations regarding the disability determination are valid. When referring to the major life activity of working, the EEOC defines "substantially limits" as: "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities." 29 CFR § 1630.2(j)(3)(i) (1998). The EEOC further identifies several factors that courts should consider when determining whether an individual is substantially limited in the major life activity of working, including "the number and types of jobs utilizing similar training, knowledge, skills or abilities, within [the] geographical area [reasonably accessible to the individual], from which the individual is also disqualified." § 1630.2(j)(3)(ii)(B). Thus, to be regarded as substantially limited in the major life activity of working, one must be regarded as precluded from more than a particular job. See § 1630.2(j)(3)(i) ("The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working").

Again, assuming without deciding that these regulations are valid, petitioner has failed to demonstrate that there is a genuine issue of material fact as to whether he is regarded as disabled. Petitioner was fired from the position of UPS mechanic because he has a physical impairment—hyperten-

sion—that is regarded as preventing him from obtaining DOT health certification. See App. to Pet. for Cert. 5a (UPS terminated Murphy because "his blood pressure exceeded the DOT's requirements for drivers of commercial vehicles"); 946 F. Supp., at 882 ("[T]he court concludes UPS did not regard Murphy as disabled, only that he was not certifiable under DOT regulations"); App. 125a, ¶ 18 (Defendant's Memorandum in Support of Motion for Summary Judgment) ("UPS considers driving commercial motor vehicles an essential function of plaintiff's job as mechanic"); id., at 103a (testimony of John R. McMahon) (stating that the reason why petitioner was fired was that he "did not meet the requirements of the Department of Transportation").

The evidence that petitioner is regarded as unable to meet the DOT regulations is not sufficient to create a genuine issue of material fact as to whether petitioner is regarded as unable to perform a class of jobs utilizing his skills. At most, petitioner has shown that he is regarded as unable to perform the job of mechanic only when that job requires driving a commercial motor vehicle—a specific type of vehicle used on a highway in interstate commerce. 49 CFR § 390.5 (1998) (defining "commercial motor vehicle" as a vehicle weighing over 10,000 pounds, designed to carry 16 or more passengers, or used in the transportation of hazardous materials). Petitioner has put forward no evidence that he is regarded as unable to perform any mechanic job that does not call for driving a commercial motor vehicle and thus does not require DOT certification. Indeed, it is undisputed that petitioner is generally employable as a mechanic. Petitioner has "performed mechanic jobs that did not require DOT certification" for "over 22 years," and he secured another job as a mechanic shortly after leaving UPS. 946 F. Supp., at 875, 876. Moreover, respondent presented uncontroverted evidence that petitioner could perform jobs such as diesel mechanic, automotive mechanic, gas-engine repairer, and gas-

welding equipment mechanic, all of which utilize petitioner's mechanical skills. See App. 115a (report of Lewis Vierling).

Consequently, in light of petitioner's skills and the array of jobs available to petitioner utilizing those skills, petitioner has failed to show that he is regarded as unable to perform a class of jobs. Rather, the undisputed record evidence demonstrates that petitioner is, at most, regarded as unable to perform only a particular job. This is insufficient, as a matter of law, to prove that petitioner is regarded as substantially limited in the major life activity of working. See *Sutton, ante,* at 492–493. Accordingly, the Court of Appeals correctly granted summary judgment in favor of respondent on petitioner's claim that he is regarded as disabled. For the reasons stated, we affirm the judgment of the Court of Appeals for the Tenth Circuit.

*It is so ordered.*

JUSTICE STEVENS, with whom JUSTICE BREYER joins, dissenting.

For the reasons stated in my dissenting opinion in *Sutton v. United Air Lines, Inc., ante,* at 495, I respectfully dissent. I believe that petitioner has a "disability" within the meaning of the ADA because, assuming petitioner's uncontested evidence to be true, his very severe hypertension—in its unmedicated state—"substantially limits" his ability to perform several major life activities. Without medication, petitioner would likely be hospitalized. See App. 81. Indeed, unlike *Sutton,* this case scarcely requires us to speculate whether Congress intended the Act to cover individuals with this impairment. Severe hypertension, in my view, easily falls within the ADA's nucleus of covered impairments. See *Sutton, ante,* at 496–503 (STEVENS, J., dissenting).

Because the Court of Appeals did not address whether petitioner was qualified or whether he could perform the essential job functions, App. to Pet. for Cert. 5a, I would reverse and remand for further proceedings.