768 So.2d 279 (2000)
Wilbert BAZERT
v.
STATE of Louisiana, DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS, Louisiana State Penitentiary State of Louisiana.
No. 99 CA 2115.
Court of Appeal of Louisiana, First Circuit.
September 22, 2000.
*280 Floyd J. Falcon, Jr., Daniel I. Avant, Baton Rouge, Counsel for Plaintiff/Appellee, Wilbert Bazert.
Rose Polito Wooden, Baton Rouge, Counsel for Defendant/Appellant, State of Louisiana, et al.
Before: LeBLANC and KUHN, JJ., and GRANT[1], J. Pro Tem.
LeBLANC, J.
Wilbert Bazert was employed by the Department of Corrections at Louisiana State Penitentiary on August 6, 1979, and he remained employed for approximately sixteen years with excellent ratings[2] until May of 1995, when he was forced by his employer to take sick leave from his job as a security officer as a result of his asthma condition which forms the basis of this complaint. Bazert was first diagnosed with asthma and allergies in 1982; he was placed on appropriate medications and did not experience complications, nor did his *281 condition interfere with the performance of his duties at Angola. However, in March, 1995, Bazert was reassigned from working at the towers, the visitor's shed and the entry building at Camp D to the Falcon 1 dormitory. His asthma immediately worsened due to the increased exposure to cigarette smoke, after-shave lotions and cologne and cleaning chemicals in the more congested and confined area of the dormitory. Bazert made several complaints to his supervisors regarding the negative effect his transfer was having on his asthma condition. He also asked to be reassigned back to his former stations, or any other drops throughout the prison where the irritants were not as prevalent. Despite his complaints and requests, Bazert remained on his Falcon 1 dormitory assignment. The increased exposure to irritants, coupled with Bazert's inability to leave the dormitory to get occasional fresh air, aggravated Bazert's asthmatic condition to such severity that he was medically advised not to work in those conditions.
On May 5, 1995, Bazert's treating physician, Dr. Albert E. Hensel, Jr., with the Allergy and Asthma Clinic of Alexandria, wrote a letter on behalf of Bazert advising that it is "impossible" for Bazert to work where he is subjected to exposure to the irritants which aggravate his asthma, warning that exposure "may very well lead to permanent disability." On May 15, 1995, Bazert submitted a "request for accommodation" form specifically requesting his former assignment at the visitor's shed or the tower. On May 18, 1995, Lee Jennings, the deputy undersecretary and ADA coordinator for the department, internally responded, "I do not believe we can accommodate this man." However, Bazert's request for accommodation was forwarded for review by an ADA Committee on May 24, 1995. The review committee determined that no accommodations could be made, given the department's policy that all corrections sergeants be able to perform all essential job functions at all posts throughout the prison. Counsel for Bazert made formal demand on the department, by way of letter dated June 14, 1995, to reinstate Bazert to his former position, alleging the department's actions in forcing Bazert into sick leave and refusing to make reasonable accommodations for him to return to work in areas of reduced exposure were in violation of the ADA. Counsel for Bazert suggested reassigning Bazert back to the tower and visitor's shed where he previously worked and experienced no aggravation to his asthma.
By letter dated June 20, 1995, the department again refused to accommodate Bazert, stating that such accommodations were unavailable: the areas, where Bazert worked formerly were not "smoke-free/fragrance-free" areas and the same cleaning chemicals used in the dormitory were also used in the towers by the tower officers. Further, the department opined that Bazert's condition was not covered by the ADA as it was not a "permanent disability." The department instructed Bazert to either return to work without accommodation or resign.
On August 7, 1995, another letter, this one written by Dr. L. Ben Gaudin, II, Bazert's treating physician following the retirement of Dr. Hensel, again advised the department of Bazert's condition and that his exposure to the environmental irritants must be "as minimal as possible" to control his asthma and prevent further damage to his lungs. Nevertheless, the department continued to refuse to provide Bazert with any accommodations. Instead, Bazert was forced to exhaust all of his available sick leave, after which he was given the option of returning to work at Falcon 1 dormitory, without any accommodations, or resign. As a result of his inability to work with accommodation, Bazert did not return to work.
Bazert filed this suit against the department alleging that he had been discriminated against by his employer in violation of the Americans With Disabilities Act of 1990(ADA), 42 U.S.C. § 12101, et seq., and the Louisiana Civil Rights for Handicapped *282 Persons Act, La. R.S. 46:2251, 46:2251-2256.[3] The matter proceeded to trial after which the trial court rendered judgment in favor of Bazert and against the department, ordering that Bazert be reinstated, with back pay, to his former position; his annual and sick leave balances were restored as of May 8, 1995, and he was credited with leave accrued in his absence. Bazert was also awarded compensatory damages in the amount of $150,000, together with legal interest and attorney's fees in the amount of $29,370.10. This appeal by the department followed.
Appellant alleges the following two assignments of error:
A. The lower court, utilizing an incorrect legal standard as to the meaning of "substantially limited in a major life activity", incorrectly found that Mr. Bazert is disabled under the ADA.
B. The lower court, utilizing an incorrect legal standard as to the meaning of "substantially limited in a major life activity", incorrectly found that Mr. Bazert was regarded by Angola Penitentiary as disabled in the major life activity of breathing.

The Americans With Disabilities Act
The ADA prohibits certain employers from discriminating against individuals on the basis of their disabilities. See 42 U.S.C. § 12112(a). Specifically, it provides that no covered employer "shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).
A "qualified individual with a disability" is identified as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8).
A "disability" is defined as:
(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;
(B) a record of such impairment; or
(C) being regarded as having such an impairment.
42 U.S.C. § 12102(2).

Standard of Review
After the trial court's ruling that Bazert is a qualified individual with a disability who was wrongfully discriminated against on the basis of that disability, the Supreme Court decided two cases, Sutton v. United Air Lines, Inc., 527 U.S. 471, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999), and Murphy v. United Parcel Service, Inc., 527 U.S. 516, 119 S.Ct. 2133, 144 L.Ed.2d 484 (1999), and held that the determination of whether an individual is disabled within the meaning of the ADA, i.e., whether an impairment "substantially limits" one or more major life activities, must be made considering the effects of any corrective and mitigating measures (i.e., medical treatment) taken by the individual. As stated by the Court, "[a] person whose physical or mental impairment is corrected by medication or other measures does not have an impairment that presently `substantially limits' a major life activity. To be sure, a person whose physical or mental impairment is corrected by mitigating measures still has an impairment, but if the impairment is corrected it does not `substantially limi[t]' a major life activity." Sutton, 119 S.Ct. at 2146-7.
Appellant argues that the trial court's decision, made prior to those rulings, is *283 "fatally flawed" for failure to evaluate the impact of medication on Bazert's condition, as now required by law. Therefore, according to appellant, we must review the record de novo. We disagree. Appellant's argument assumes that because the trial court's decision predates the Supreme Court's decisions in Sutton and Murphy, it was made based on an analysis of Bazert's condition in an unmedicated state. However, a review of the record does not support this assumption. The medical evidence in the record establishes only that Bazert took medication in an effort to control his asthma. This evidence established that although Bazert's asthma was improved while he was on medication, even with medication, Bazert's asthma was aggravated by the exposure to irritants in the Falcon 1 dormitory to such a degree that he was unable to work in those conditions. Thus, the record supports that the proper legal standard as enunciated in Sutton and Murphy was followed in this case, even though the trial court's judgment predated those decisions. Furthermore, application of that legal standard to the facts of this case has no significant impact given that the medication did not have any corrective impact on Bazert's condition when he was working in the Falcon 1 dormitory. Therefore, there is no need for us to conduct a de novo review of this matter; the manifest error standard is the applicable standard of review. See Rosell v. ESCO, 549 So.2d 840 (La.1989).

Analysis
The first inquiry is whether Mr. Bazert has a disability: does his asthmatic condition (physical impairment) "substantially limit" one or more of his major life activities? The trial court found that it did; this finding is amply supported by the record. We have already determined that Bazert's condition was substantially limiting pursuant to the Supreme Court's latest pronouncement: Bazert's condition was not corrected by mitigating medical measures, i.e., his asthma limits him in breathing[4] in both, a medicated and unmedicated state. Therefore, the record established that Bazert has a physical impairment which substantially limits him in a major life activityhe has a disability as defined in the ADA.
We must next determine whether the trial court erred in finding that he was a "qualified individual" with a disability against whom the Act forbids discrimination. Defined in the ADA itself, a "qualified individual" is someone who "with or without reasonable accommodation, can perform the essential functions of the employment position...."
In an attempt to prove Bazert was unable to perform all of the essential functions of a security officer, the department presented testimony regarding an unwritten rule that one of the essential functions of a security officer is his ability to work at any and all drops throughout the prison at any given time, and for any length of time. Because the evidence clearly established that Bazert was unable to work for an extended period of time at the Falcon 1 dormitory, the department contends that he is not a "qualified individual." The trial court disagreed and we find no error with that finding, which is amply supported by the record. The evidence established that in the sixteen years of Bazert's employment with the department, he had worked many, if not all, of the drops at the prison competently and satisfactorily. As noted earlier in footnote one of this opinion, Bazert's performance at all of these locations was excellent and commendable. Further, despite the department's testimony otherwise, the trial court found that the essential functions of the job of security officer only required that the officer be able to perform all drops/positions for a sufficient time to cover emergency situations, and that Mr. Bazert could perform in any drop during an emergency situation. The trial court based this conclusion on other evidence in the record which established *284 that the department places female employees at certain drops for extended periods of time in order to minimize their physical contact with male offenders and that certain security officers, who were not qualified to serve in the towers were never assigned to that position.
The evidence in the record also supports the trial court's finding that Mr. Bazert was qualified to work in "virtually any other drop on any other shift without creating a security risk or economic hardship to the prison," thus the accommodation needed and requested by Bazert, a transfer to any of these other drops, was reasonable.
Having found the trial court did not err in concluding Mr. Bazert was disabled pursuant to the ADA, we need not address appellant's second assignment of error pertaining to whether Mr. Bazert was "regarded" as disabled. For the foregoing reasons, finding no manifest error in any of the trial court's findings, we affirm the judgment of the trial court. Costs of this appeal, in the amount of $3,790.82 are assessed to the appellant/department.
AFFIRMED.
NOTES
[1] Judge Jo Ellen Grant of the 24th Judicial District Court serving Pro Tempore by special appointment of the Louisiana Supreme Court.
[2] We note that the record contains Bazert's service rating reports for the years 1980 through 1990; testimony established that those for the years 1990 through 1995 could not be found. He not only received satisfactory ratings, but each of these reports contains additional complimentary remarks by Bazert's supervisors indicating that Bazert was an exemplary employee. The following are excerpts from those reports: "[y]ou are to be commended for your ability to get along with others"; "personal appearance is very noteworthy"; "a responsible and dependable person.... You are always on time ... You have been very helpful to your fellow officers as well as to your supervisors and this is highly appreciated.... You do a good job on your assigned duties"; "[y]ou do an outstanding job wherever you are placed."; "commend you on a excellent job ... you are an asset to the institution ... can always depend on you."; "a good all-around officer and with no problems can work anywhere you are assigned"; "your ability to work any drop at Camp D should also be noted."
[3] Although violations of state law were alleged in the original petition, the case was tried and decided on the basis of the ADA. The appeal addresses only the application of the ADA; thus, our review is limited to the ADA.
[4] It is undisputed that breathing is a major life activity.