United States Court of Appeals
Fifth Circuit

**F I L E D**

**June 30, 2003**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

No. 03-10126
Summary Calendar

CAREY MCCLURE,

Plaintiff-Appellant,

versus

GENERAL MOTORS CORPORATION,

Defendant-Appellee.

Appeal from the United States District Court for
the Northern District of Texas
(USDC No. 4:01-CV-878-A)
_____

Before REAVLEY, BARKSDALE and CLEMENT, Circuit Judges.

PER CURIAM:[*]

Carey McClure, who suffers from a rare form of muscular dystrophy affecting the

muscles in his upper arms and shoulders, appeals the district court's grant of summary

_____

[*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion
should not be published and is not precedent except under the limited circumstances
set forth in 5TH CIR. R. 47.5.4.

judgment in favor of General Motors Corporation on his claim of employment discrimination under the Americans With Disabilities Act (ADA). See 42 U.S.C. § 12101 et seq. The district court concluded that McClure could not assert a claim under the ADA because the evidence does not establish that he is disabled or that General Motors regarded McClure as disabled. We affirm for the following reasons.

1.    We review the district court's summary judgment rulings de novo, applying the same standard as the district court. Blanks v. Southwestern Bell Communs., Inc., 310 F.3d 398, 400 (5th Cir. 2002). In making the ultimate determination of whether summary judgment was proper, the Court reviews the facts, and all inferences drawn from those facts, in the light most favorable to the party opposing the motion. Id.

2.    "As a threshold requirement in an ADA claim, the plaintiff must, of course, establish that he has a disability." Waldrip v. General Elec. Co., 325 F.3d 652, 654 (5th Cir. 2003) (quoting Rogers v. Int'l Marine Terminals, Inc., 87 F.3d 755, 758 (5th Cir. 1996)). The ADA defines "disability" as "a physical . . . impairment that substantially limits one or more major life activities of [an] individual." 42 U.S.C. § 12102(2)(A). There is a three-part test for applying this definition. Bragdon v. Abbott, 524 U.S. 624, 631 (1998). A court must determine first whether the individual alleging a violation of the ADA has an "impairment," next whether the activity on which he relies is a "major life activity," and, if so, whether his

2

impairment "substantially limits" that major life activity.  Id.

3.  McClure argues that the district court erred by employing the wrong legal standard to determine whether he is disabled under the ADA and by focusing on whether his impairment substantially limits his ability to work without considering other major life activities.  We disagree.  The district court's opinion indicates that it considered the difficulties McClure experiences caring for himself, eating, and performing manual tasks, and concluded that those difficulties did not severely restrict his ability to engage in those major life activities.  See Toyota Motor Mfg., Ky., Inc. v. Williams, 534 U.S. 184, 197 (2002) (explaining that a "substantially limiting" impairment is one that "prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives").  The district court applied the correct legal standard—whether McClure is substantially limited in the performance of one or more major life activity—and considered major life activities that McClure identified in his briefing to the lower court.  Thus, the district court's consideration of McClure's ability to work (which McClure never claimed was substantially limited by his impairment) was immaterial.

4.  There is no doubt that McClure performs the major life activities of caring for himself, eating, engaging in sexual relations in a different manner, under different conditions, and using more time than the average individual in the general

3

population. But the evidence does not show that these differences rise to the level of severe restrictions. A "mere difference" in the manner, condition, and duration of an individual's performance of a major life activity cannot establish that an individual is disabled; there must be a "significant restriction" of an individual's performance of a major life activity. See Albertson's, Inc. v. Kirkingburg, 527 U.S. 555, 565-66 (1999).

5. In this regard, courts must consider how each impaired individual seeking relief under the ADA performs major life activities, and "mitigating measures must be taken into account in judging whether an individual possesses a disability." Id. at 565. There is "no principled basis for distinguishing between measures undertaken with artificial aids, like medications and devices, and measures undertaken, whether consciously or not, with the body's own systems." Id. at 565-66; see also Sutton v. United Air Lines, Inc.. 527 U.S. 471, 488 (1999) (finding that severely myopic petitioners were not significantly restricted in seeing because they used corrective lenses); Murphy v. United Parcel Serv., Inc., 527 U.S. 516, 521 (1999) (finding that the petitioner was not substantially limited in any major life activity where his high blood pressure was controlled by medication). McClure has adapted how he bathes, combs his hair, brushes his teeth, dresses, eats, and performs manual tasks by supporting one arm with the other, repositioning his body, or using a step-stool or ladder. The district court's

4

determination that the variations and interferences that McClure experiences in performing these activities are minor is fully supported by the record, including McClure's own briefing to the district court (which noted that "[b]ecause McClure has lived with muscular dystrophy his entire adult life, he has successfully learned to live and work with his disability, and to adapt himself accordingly"). McClure's ability to overcome the obstacles that life has placed in his path is admirable. In light of this ability, however, we cannot say that the record supports the conclusion that his impairment substantially limits his ability to engage in one or more major life activities.

6. Even if McClure does not suffer from a disability as defined by the ADA, he may still qualify for the Act's protections if GM "regarded" him as disabled. See McInnis v. Alamo Community College Dist., 207 F.3d 276, 281 (5th Cir. 2000). McClure contends he was "regarded as" disabled because General Motor's Plant Medical Director Dr. Karl Kuipers treated him as having an impairment that substantially limits his ability to work when in fact his impairment does not so limit his ability to work.

7. An individual must be regarded as precluded from more than a particular job in order to establish that he was treated a having an impairment that substantially limits one's ability to work. See Murphy, 527 U.S. at 523 ("When referring to the major life activity of working, the EEOC defines 'substantially limits' as:

5

'significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities.'") (quoting 29 C.F.R. § 1630.2(j)(3)(ii)); see also Gowesky v. Singing River Hosp. Sys., 321 F.3d 503, 508 (5th Cir. 2003).

8. McClure places great emphasis on Kuipers's admission that he was not aware of the essential functions of the job GM had offered to McClure when he permanently deferred McClure's employment with GM after a post-offer/pre-employment physical. This testimony is insufficient to raise an issue of material fact regarding whether McClure was "regarded as" disabled because it does not suggest that Dr. Kuipers regarded McClure as disabled from more than one particular job. In his deposition, Dr. Kuipers gave two reasons for recommending that GM withdraw McClure's offer of employment. First, he felt McClure exhibited a careless disregard for his and others' safety based on his responses to Dr. Kuiper's questions regarding how he would accomplish above-shoulder work. This does not suggest that Dr. Kuipers believed that McClure's impairment significantly limits his ability to perform a class or broad range of jobs. Second, Dr. Kuipers felt that McClure would not be able to perform all of the functions of an electrician at the Arlington plant. Although Dr. Kuipers was not aware of the essential functions of the position, he was aware that General Motors was building a body shop facility at the Arlington plant and that General Motors was hiring

6

electricians to work on the construction of the body shop. Dr. Kuipers was concerned with McClure's ability to perform overhead electrical work in the body shop, specifically changing light fixtures or repairing a wire conduit at the ceiling. This testimony suggests only that Dr. Kuipers was concerned with McClure's ability to perform the work of an electrician at General Motors's Arlington plant; it does not create an issue of material fact as to whether Kuipers considered McClure disabled from working as an electrician altogether or from any other class or broad range of jobs.

9. We note that McClure complains that "if one who suffers from undisputed muscular dystrophy is not an individual with a disability under the ADA," then the statute is rendered meaningless. McClure's complaint is with the Supreme Court's interpretation of the ADA, for under that Court's precedent he was required to produce evidence that the extent of the limitations caused by his muscular dystrophy in terms of his own experience is substantial. See Kirkinburg, 527 U.S. at 567. His failure to do so precludes this court from reversing the district court's grant of summary judgment.

AFFIRMED.