

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-21-2004

# Parker v. Port Auth Alghny

Precedential or Non-Precedential: Non-Precedential

Docket No. 02-2917

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Parker v. Port Auth Alghny" (2004). *2004 Decisions.* Paper 1083.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/1083

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

<u>**NOT PRECEDENTIAL**</u>

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 02-2917
_____

GILDA GLADYS PARKER,

Appellant

v.

PORT AUTHORITY OF ALLEGHENY COUNTY,

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

(Dist. Court No.  00-cv-00671)
District Court Judge: Hon. Donetta W. Ambrose

Submitted Under Third Circuit LAR 34.1(a)
October 23, 2003

Before:  ALITO, FUENTES, and BECKER, <u>Circuit Judges</u>

(Opinion Filed: January 21, 2004)

_____

OPINION OF THE COURT
_____

PER CURIAM:

This is an appeal from the District Court's grant of summary judgment in favor of the Port Authority of Allegheny County ("the Port Authority") on Gilda Gladys Parker's claims that the Port Authority terminated her employment in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. ("the ADA") and the Pennsylvania Human Relations Act, 43 Pa. Stat. § 951 et seq. ("the PHRA").[1] We affirm.

**I.**

Parker was diagnosed with diabetes in 1993. She began working for the Port Authority as a bus operator trainee on March 15, 1999. After initial training and before entering a 90-probationary period, Parker received a copy of the Port Authority's Performance Code for Probationary Employees. The Performance Code sets out the Port Authority's attendance policy and outlines each action considered sufficient cause for a final written warning, suspension, or immediate discharge. Additionally, the Performance Code notes that "[w]ithin the first thirty (30) scheduled working days, all incident/occurrences may be viewed for possible disciplinary action up to and including discharge." Parker began her 90-day probationary period on May 16, 1999.

On May 18, 1999, the Port Authority learned that Parker had been involved in an incident during which she did not follow proper routing, became lost, and then failed to

---

[1] This Court's analysis regarding Parker's ADA claim is dispositive of her PHRA claim. Taylor v. Phoenixville Sch. Dist., 184 F.3d 296, 306 (3d Cir. 1999) ("analysis of an ADA claim applies equally to a PHRA claim").

follow the proper procedure of reporting her location to the Traffic Division of the Port Authority and obtaining re-routing directions. Instead, Parker improperly obtained directions from the bus passengers.

On May 20, 1999, the Port Authority's Employee Relations Representative, the Director of Service Delivery for the Port Authority's Harmar Division, and an instructor met with Parker regarding the May 18th incident and issued a Final Written Warning in accordance with the Performance Code. On June 1, 1999, two complaints were lodged against Parker. One complaint alleged that Parker's bus missed a stop. The other complaint alleged that Parker's bus was 25 minutes late at a different stop. The next day, Parker met with Robin Rochez, her Port Authority supervisor, to discuss the complaints. Rochez retrained Parker on a variety of procedures.

On June 3, 1999, Parker called the Port Authority to report that she would not be at work. Parker spoke with Teenya McLellan (an instructor) and Tom Collins (a Harmar Supervisor), neither of whom was her supervisor. Parker stated that she was not feeling well because of her diabetes. When Rochez learned of this, she agreed that Parker should not report to work because, among other reasons, Rochez did not believe that it was safe for Parker to return until she had been cleared by the Port Authority's medical department. Parker asked Collins about the possibility of a light-duty position with the Port Authority. Collins followed up with Donna Lucas, the Employee Relations Representative. On the same day, Lucas informed Parker that light-duty positions were

not available for probationary employees because those employees needed to work in the positions for which they were hired in order to be evaluated.

Also on June 3, the Port Authority informed Parker that she needed to obtain information from her doctor regarding her medical status in order to return to work. The Port Authority requested information to evaluate whether Parker's medical condition disqualified her from operating a bus. Approximately one week later, Parker faxed a note from her doctor indicating that she had an appointment on June 15, 1999. Several days after the fax was received, Parker still had not provided any medical documentation for her absences. Accordingly, the Port Authority gave her an authorization for the release of her medical records. After Parker failed to provide any information regarding her status, supervisors at the Port Authority scheduled a meeting with her to review her performance since her probationary period commenced. The meeting occurred on June 23, 1999. Due to Parker's overall unsatisfactory work performance and excessive, unexcused absenteeism, the Port Authority terminated her employment.

On October 8, 1999, Parker filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging disability discrimination under the ADA and the PHRA. After receiving the EEOC's notice of dismissal and right to sue, Parker filed this action. The District Court granted summary judgment in favor of the Port Authority, and the Court denied as moot Parker's motion to strike as inadmissible hearsay various assertions in the Port Authority's Statement of Material Facts.

## II.

We exercise plenary review over a District Court's grant of summary judgment and therefore apply the same legal standards applied by the District Court. Courson v. Bert Bell NFL Retirement Plan, 214 F.3d 136, 142 (3d Cir. 2000). In evaluating the Port Authority's motion for summary judgment, we must view the evidence in the light most favorable to Parker and must decide whether the Port Authority was entitled to judgment as a matter of law. See FED. R. CIV. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

## III.

The ADA prohibits "discrimination against a qualified individual with a disability because of the disability of such individual." 42 U.S.C. § 12112(a). To establish that she has a disability, Parker must show that: (i) she has a physical or mental impairment that substantially limits one or more of her major life activities; (ii) she has a record of such impairment; or (iii) she was "regarded as" having such an impairment by the Port Authority. See Marinelli v. City of Erie, Pa., 216 F.3d 354, 359 (3d Cir. 2000) (applying 42 U.S.C. § 12102(2)).

Parker's claims are based on diabetes, a condition with which she was diagnosed in 1993. Parker concedes that her diabetes was controlled and that it did not substantially limit a major life activity. Therefore, her claims are dependent on her ability to prove that the Port Authority regarded her as having an impairment that substantially limits a

-5-

major life activity.

To be "disabled" under the "regarded as" portion of the ADA's definition of disability, Parker must demonstrate either that: (i) although she had no impairment at all, the Port Authority erroneously believed that she had an impairment that substantially limited major life activities; or (ii) she had a non-limiting impairment that the Port Authority mistakenly believed limited a major life activity. See Sutton v. United Air Lines, Inc., 527 U.S. 471, 489 (1999);[2] Tice v. Ctr. Area Transp. Auth., 247 F.3d 506, 514 (3d Cir. 2001). In either case, the definition of "substantially limits" remains the same as it does in other parts of the statute.[3] To establish that the Port Authority believed her to be limited in the life activity of "working," "working" must encompass "either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities." Sutton, 527 U.S. at 491 (citation and internal quotations omitted); accord Murphy v. United Parcel Serv., Inc., 527 U.S. 516, 523

---

[2] The plaintiffs in Sutton had vision impairments which were correctable by prescriptive glasses. The plaintiffs' vision problems caused them to be denied positions as commercial airline pilots. The plaintiffs sued under the ADA's "regarded as" prong, and the Supreme Court denied their claim, *inter alia*, because "if jobs utilizing an individual's skill (but not his or her unique talents) are available, one is not precluded from a substantial class of jobs. Similarly, if a host of different jobs are available, one is not precluded from a broad range of jobs." Sutton, 527 U.S. at 492.

[3] The EEOC regulations also allow for an individual to establish that s/he is "regarded as" disabled if s/he "[h]as a physical or mental impairment that substantially limits major life activities only as a result of the attitudes of others toward such impairment." 29 C.F.R. § 1630.2(l)(2). "These misperceptions often 'resul[t] from stereotypic assumptions not truly indicative of . . . individual ability.'" See Sutton, 527 U.S. at 490 (citing 42 U.S.C. § 12101(7)).

(1999). Thus, "to be regarded as substantially limited in the major life activity of working, one must be regarded as precluded from more than a particular job." Murphy, 527 U.S. at 523; accord Sutton, 527 U.S. at 492.

In this case, the record, even when viewed in the light most favorable to Parker, is insufficient to show that the Port Authority regarded her "as precluded from more than a particular job." Murphy, 527 U.S. at 523. Parker relies heavily on Donna Lucas's alleged statement that Parker "couldn't handle the stress that goes along with the job." Parker suggests that Lucas's statement shows that Lucas regarded her as unable to perform "a variety of jobs [that] involve stress, driving and the public." Appellant's Br. at 19. We reject this argument. While we give Parker the benefit of any reasonable inferences from the record, this argument draws inferences that are not reasonable. Lucas's statement cannot reasonably be interpreted to mean that she felt that Parker was incapable of performing all jobs that involved any degree of stress, any type or amount of driving, and any type or degree of interaction with the public. Rather, all that Lucas's statement may reasonably be interpreted to mean is that she did not think that Parker could handle the particular mix of stress, driving, and public interaction involved in the particular job of driving a bus. Considering Lucas's alleged statement and all of the other evidence on which Parker relies, we do not find sufficient evidence to support a regarded-as claim.[4]

---

[4]We do not find the EEOC Policy Statement on which Parker relies (Appellant's Br. at 24) to be apposite. There, the employee was regarded as incapable performing any job requiring the ability to work well with the public. Here, Lucas's statement may not

-7-

Parker argues that her regarded-as claim is supported by the Port Authority's insistence that she provide medical information before returning to work. Requiring an employee to "submit a medical release and be cleared by [her] physician" is not evidence that an employer regards the employee as disabled. See Somers v. City of Minneapolis, 245 F.3d 782, 788 (8th Cir. 2001). As we noted in Tice, 247 F.3d at 515, "an appropriately - tailored examination only establishes that the employer harbors *doubts* (not certainties) with respect to an employee's ability to perform a *particular* job") (emphasis in original). "Doubts alone do not demonstrate that the employee was held in any particular regard, and, as we have explained, inability to perform a particular job is not a disability within the meaning of the Act." Id. (citation omitted). Therefore, the Port Authority's request for a medical excuse for Parker's absences does not indicate that the Port Authority regarded her as disabled, in violation of the ADA.

**IV.**

We have considered all of Parker's arguments, but we find no basis for reversal. Accordingly, the District Court's grant of summary judgment in favor of the Port Authority is affirmed.

---

reasonably be read as expressing any similar view about Parker's abilities. Instead, Lucas allegedly referred just to the job of driving a bus.