**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 06a0674n.06
Filed: September 6, 2006

No. 05-6434

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

JUDITH ANN LOGAN,

      Plaintiff-Appellant,

v.

MARATHON PETROLEUM
COMPANY, LLC,

      Defendant-Appellee.

**On Appeal from the United States District Court
for the Eastern District of Kentucky**

---

Before:     **KEITH** and **BATCHELDER**, Circuit Judges; **ALDRICH**, District Judge.[*]

    **ALDRICH, J.**   This is a disability discrimination case, in which Plaintiff-Appellant Judith Ann Logan ("Logan") seeks relief from the entry of summary judgment in favor of Defendant-Appellee Marathon Petroleum Company, L.L.C. (formerly "Marathon Ashland Petroleum;" hereinafter "MAP"). Because the district court did not err in its determination that no genuine issues of material fact remained on Logan's claims, or in its determination that MAP is entitled to judgment as a matter of law, its decision is AFFIRMED.

**I. Background**

---

   * The Honorable Ann Aldrich, United States District Judge for the Northern District of Ohio, sitting by designation.

Logan began her employment with MAP as a tanker truck driver, in May of 2001. Her duties as a driver included the pickup of gasoline and other petroleum products from the MAP facility in Catlettsburg, Kentucky, for delivery around the area.

In October of 2001, Logan began experiencing health problems, including dizziness while at work. A subsequent MRI revealed the presence of brain lesions, and Logan then underwent two brain biopsies. Following a spinal puncture in 2002, Logan was diagnosed with Multiple Sclerosis ("MS").

In February of 2002, Logan attempted to return to work for MAP, but could not pass the physical. At that time, Logan's supervisor, Bob Odom ("Odom"), suggested that she might reapply for employment with South Shore Oil and Gas, her previous employer. She did so, and was rehired. It appears that Logan remains employed by South Shore, transporting petroleum to and from Kentucky facilities, including MAP's Catlettsburg depot.

When deposed, Logan testified that Odom had also told her, "Judy, I can't have someone with MS driving for Marathon." Appellant's Brief at 4; J.A.66. She also testified that Odom made reference to his sister-in-law, who had retired from her teaching position after MS rendered her unable to walk. *Id*. MAP does not directly dispute the veracity of these allegations.

Marathon officially terminated Logan's employment in April of 2002. Soon after her termination, Odom approached Logan about the possibility of rehiring her in a maintenance or custodial position. Logan was interested in this offer, but no such positions became available. Logan does not dispute the evidence provided by MAP demonstrating that no postings were made for such positions during the relevant time period.

Logan filed her Verified Complaint in Boyd County (Kentucky) Circuit Court on April 15, 2004. In it, she charges that MAP wrongfully terminated her, but cites no specific statute or regulation prohibiting MAP's conduct. On May 7, 2004, MAP removed the case to federal court for the Eastern District of Kentucky, claiming that MAP is a Delaware corporation with its principal place of business in Ohio, and citing diversity jurisdiction.

Although Logan's complaint cited no statutory basis for her claims, the federal court interpreted Logan's claims as arising under the Kentucky Civil Rights Act (KCRA), KRS § 344.030, *et seq*. Modeled after the federal Americans with Disabilities Act (ADA), 42 U.S.C. § 12112, *et seq.*, KCRA makes it illegal for any employer to discriminate on the basis of disability[1]. Because Logan's complaint included no allegation that she was disabled, the court determined that she could only proceed under the sections of the KCRA prohibiting discrimination against employees "regarded as having . . . an impairment." *See* KRS § 344.010(4)(c); 344.040(1).

On August 5, 2005, the district court granted MAP's motion for summary judgment, finding that no genuine issues of material fact remained concerning Logan's KCRA claim. This appeal followed.

## II. Discussion

Logan challenges the district court's decision in very vague terms, asserting that it was in error, and that the case should have been allowed to proceed to a jury trial. The panel reviews a district court's decision to grant summary judgment *de novo*. *Sperle v. MI Dept. of Corre.*, 297 F.3d

---

[1]This modeling makes it appropriate to cite ADA case law, including federal regulations, in interpreting KCRA. *See, e.g., Howard Baer, Inc. v. Schave*, 127 S.W.3d 589, 592 (Ky. 2003) (footnote and citations omitted).

483, 490 (6th Cir. 2002); *see* *also* *Jackson v. Leighton*, 168 F.3d 903, 909 (6th Cir. 1999), (citing *EEOC v. University of Detroit*, 904 F.2d 331, 334 (6th Cir. 1990)).

To defeat a motion for summary judgment, a party must "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The Court must view the facts and inferences drawn therefrom in the light most favorable to Logan. *See* *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); see *also* *Jackson*, 168 F.3d at 909 (citing *Huffman v. United States*, 82 F.3d 703, 705 (6th Cir. 1996)). The central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

The district court found that summary judgment was appropriate because Logan failed to prove an essential element of her case, namely that she was perceived as disabled by MAP. Such a failure would be fatal to Logan's case, since

> the plain language of Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986).

More specifically, the district court found that Logan could not satisfy the statute's requirement that she demonstrate that her employer perceived her as unable to perform the functions of a job because of a medical condition when, in fact, [she was] perfectly able to meet the job's duties." *Ross v. Campbell Soup Co.*, 237 F.3d 701, 706 (6th Cir. 2001).

- 4 -

> Under [the ADA], individuals who are "regarded as" having a disability are disabled within the meaning of the ADA. *See* [42 U.S.C.] § 12102(2)(C). Subsection (C) provides that having a disability includes "being regarded as having," § 12102(2)(C), "a physical or mental impairment that substantially limits one or more of the major life activities of such individual," § 12102(2)(A). There are two apparent ways in which individuals may fall within this statutory definition: (1) a covered entity mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities, or (2) a covered entity mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities. In both cases, it is necessary that a covered entity entertain misperceptions about the individual -- it must believe either that one has a substantially limiting impairment that one does not have or that one has a substantially limiting impairment when, in fact, the impairment is not so limiting.

Sutton v. United Air Lines, Inc., 527 U.S. 471, 489 (1999).

Under either formulation, Logan's inability to point to MAP's misperceptions concerning her ability to perform "major life activities" is fatal to the success of her claim. Viewing all facts in the light most favorable to Logan, it is reasonable to interpret Odom's comments as indicating a mistaken belief that she could not adequately perform the tasks associated with driving a Marathon petroleum truck. It is not, however, necessarily true that Odom believed her unable to drive any truck. It was Odom, after all, who suggested that Logan reapply for her previous driving position – a job which she subsequently obtained – and Odom's facility which continues to provide Logan with access to its petroleum supplies.

In any case, proof that MAP regarded Logan as too impaired to properly drive any truck would not be enough. Under the applicable federal regulations, the phrase "Major Life Activities means functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i). Logan might conceivably pursue a theory that she was perceived as unable to perform the "major life activity of working," if she could show that MAP viewed her as unable "to perform either a class of jobs or a broad range of jobs in

- 5 -

various classes as compared to the average person having comparable training, skills and abilities." 29 C.F.R. § 1630.2(j)(3)(i). Unfortunately for Logan, "[t]he inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." *Id.* MAP's actions demonstrate that it regarded Logan as able to: (a) perform work such as custodial and maintenance jobs; and (b) drive a truck for her previous employer. Viewed in the light most favorable to Logan, Odom's remarks only demonstrate that he saw her as unable to drive a truck for MAP, clearly a "single, particular job."

The courts have routinely applied these very regulations to bar "regarded as" claims by similarly situated employees. *See, e.g., Sutton*, 527 U.S. at 491 ("When the major life activity under consideration is that of working, the [statute] requires, at a minimum, that plaintiffs allege they are unable to work in a broad class of jobs."); *Baer*, 127 S.W.3d at 594 ("The evidence showed only that the company perceived Schave as not qualified to work as a truck driver for Baer."); *Murphy v. United Parcel Service, Inc.*, 527 U.S. 516, 525 (1999) ("[T]he undisputed record evidence demonstrates that petitioner is, at most, regarded as unable to perform only a particular job.")

Logan relies extensively on this Circuit's holding in *Ross*, which is distinguishable from the instant case. In *Ross*, the plaintiff suffered repeated back injuries, which rendered his employer more likely to view him as "significantly limited in his ability to lift or in his ability to work in a broad class of jobs, not simply his job at Campbell Soup[.]" 237 F.3d at 709. Unlike MAP, Ross's employer also concocted a pretextual excuse for his firing. Instead, the facts of Logan's case bear a more substantial similarity to those of *Baer* and *Murphy*, in which summary judgment in the employer's favor was upheld on appeal.

Because Logan's Verified Complaint cites no law whatsoever, and recites facts and assertions which could only be construed as stating a "regarded as" claim, Logan was relegated to a position in which she needed to show that MAP perceived her as unable to perform "major life activities." Clearly, the evidence available to her did not support the existence of such a perception, and the district court did not err in refusing to rewrite Logan's complaint for her.

## III. Conclusion

For the foregoing reasons, the decision of the district court is AFFIRMED in its entirety.