**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**June 8, 2005**

**PATRICK FISHER**
**Clerk**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

PAUL D. GORMAN,

        Plaintiff - Appellee,

v.

CARPENTERS' & MILLWRIGHTS'
HEALTH BENEFIT TRUST FUND,

        Defendant - Appellant.

No. 03-1526

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**(D.C. NO. 03-WY-191-CB (PAC))**

Timothy J. Parsons (Dean C. Heizer and Miranda K. Hawkins with him on the briefs) of Gorsuch Kirgis, LLP, Denver, Colorado, for Defendant-Appellant.

Raphael M. Solot, Denver, Colorado, for Plaintiff-Appellee.

Before **BRISCOE** and **MURPHY** , Circuit Judges, and **STEWART** [*], District Judge.

**STEWART** , District Judge.

---

     [*] The Honorable Ted Stewart, United States District Judge for the District of Utah, sitting by designation.

Defendant/appellant Carpenters' and MillWrights' Health Benefit Trust Fund (the Fund) appeals from the district court's Order on Motions for Summary Judgment granting plaintiff/appellee Paul Gorman (Plaintiff) equitable relief from the terms of a subrogation contract on the grounds that the Fund acted arbitrarily and capriciously because its contract imposed a condition on Plaintiff that was not contained in the Plan or the Summary Plan Description. The new condition was that the Plaintiff must file a third-party action at his own expense in order to obtain his vested medical benefits resulting from the injuries he sustained in an accident. The Fund also appeals the award to Plaintiff of attorney's fees and costs under 29 U.S.C. § 1132(g)(1). We have jurisdiction under 28 U.S.C. § 1291 and affirm.

## BACKGROUND

On August 31, 2002, Plaintiff and his wife were injured in a motorcycle accident. The accident left Plaintiff unable to work. Plaintiff was a beneficiary of the Fund, an ERISA-qualified welfare plan described in a Restated Plan document (the Plan) and the 1999 Summary Plan Description (the 1999 SPD). In September 2002, Plaintiff and his wife filed medical claims with the Fund. Plaintiff's medical expenses totaled over $120,000.

Initially, the Fund approved payment of Plaintiff's wife's claim. However,

it denied Plaintiff's claim for benefits under the 1999 SPD's commission of a crime exclusion because he was cited by law enforcement for "following too close" in connection with the accident. Pursuant to Plaintiff's administrative appeal, the Fund's trustees eventually reversed their denial and allowed Plaintiff's claim. However, the Fund required Plaintiff and his wife to sign its Subrogation Assignment Contract (SAC) as a pre-condition to payment of benefits. Although the Fund asserted the 1999 SPD provided authority for the requirement, the SAC added several provisions not included in the 1999 SPD. The new provisions included (1) that Plaintiff must file a legal action against the third party within one year; (2) that the Fund would not "be liable for payment of any portion of the beneficiary's litigation costs and/or attorney's fees in connection with any legal action against such third-party;" (3) that Plaintiff would diligently pursue the third-party action; and (4) that Plaintiff would obtain the Fund's prior written consent for any settlement of the third-party action that would not pay the Fund in full. Rec. 230-31.

The SAC recites that Plaintiff desired to proceed with an action against the third-party. It is undisputed that Plaintiff did not want to bring such a lawsuit under the conditions imposed by the SAC. However, he was injured and unable to work, was under pressure from creditors to pay his substantial medical bills, and the Fund refused to pay any of his medical bills unless he signed the SAC.

Plaintiff's wife refused to sign the SAC under those conditions and eventually withdrew her claim for health benefits.

On January 14, 2003, Plaintiff signed the SAC in order to obtain payment of his medical bills while he challenged the Fund's right to require him to sue at his own expense. Plaintiff's attorney refused the Fund's demand that he also sign the SAC.

On January 17, 2003, Plaintiff filed a lawsuit against the third-party driver for the purpose of complying with the SAC. On January 30, 2003, Plaintiff filed the present action challenging the SAC under ERISA.

The Fund amended its Plan and the 1999 SPD to add an express provision that the Fund would not pay any attorney's fees or costs (the 2003 SPD). Significantly, however, the 2003 SPD did not provide that the Fund could *require* a participant or beneficiary to file a third-party action at his own expense as a condition of receiving benefits. Further, although the 2003 SPD is dated as "effective January 1, 2003," it is undisputed that the Fund did not distribute it to plan participants until May 2003, long after Plaintiff signed the SAC and filed his third-party suit and this action.

Plaintiff filed this action seeking equitable relief in the form of reformation, rescission, or declaratory relief. The parties agreed the facts were undisputed and submitted the matter pursuant to summary judgment. The district

court applied the 1999 SPD because it was the SPD in effect at the time Plaintiff made his claim. The district court found that the Fund's interpretation of the 1999 SPD was unreasonable. It found that the Fund was arbitrary in "going beyond any reasonable request for documentation" under the 1999 SPD's cooperation clause when it imposed the SAC as a prerequisite for benefits. It also found as follows:

> The Fund acted in an arbitrary and capricious manner in requiring the signing of the SAC and forcing Plaintiff to bring a third-party action when he may have chosen not to bring such an action. If Plaintiff chose not to bring a third-party action, [t]he Fund, through its subrogation rights, could have brought a legal action at their own expense against a third-party. However, [t]he Fund put all of the risk on the beneficiary and retained all of the benefits for a no lose situation.

Rec. at 287.

Accordingly, the district court rescinded the SAC and granted equitable relief. It initially ordered that any third-party recovery be divided proportionally, with the Fund "being reimbursed for the amount of funds it paid to Plaintiff, less [the Fund's] proportion of the attorney's fees and litigation costs." *Id*. at 288. Pursuant to § 1132(g)(1), the district court awarded Plaintiff reasonable attorney's fees and costs associated with defending the Fund's Motion for Summary Judgment.

Subsequently, the third-party claim settled for $80,000.00, less than the

$86,014.24 total of benefits paid by the Fund.[11] The settlement proceeds are currently held in Plaintiff's attorney's trust account.

On November 28, 2003, the district court entered an Order on Various Motions (Clarification Order), noting that the third-party claim had settled for an amount less than the amount of the benefits paid to Plaintiff by the Fund. The district court found the attorney's fees ($26,666) and costs ($3,323) to be reasonable, ordered them subtracted from the settlement proceeds, and ordered that the entire net amount of $50,011 be paid to the Fund per its right of subrogation under the 1999 SPD. It also found Plaintiff's attorney's fees and costs in the amount of $19,732.50 for defending the Fund's summary judgment motion to be reasonable and granted judgment in that amount to Plaintiff.

On appeal, the Fund contends that: (1) the district court erred in finding the Plan's interpretation of the Plan documents to be arbitrary and capricious; (2) the district court erred by rescinding the subrogation contract because rescission is not appropriate equitable relief under ERISA, 29 U.S.C. §1132(a)(3); (3) the district court erred in applying the common fund doctrine; and (4) the district court erred by awarding Plaintiff attorney's fees pursuant to ERISA, 29 U.S.C. § 1132(g)(1).

---

[11] The Fund paid $82,504.95 in medical benefits and $3,509.29 in disability benefits.

**DISCUSSION**

A.   Standard of Review

This court reviews the grant of summary judgment under the same standard as applied by the district court. *Charter Canyon Treatment Ctr. v. Pool Co.*, 153 F.3d 1132, 1135 (10th Cir. 1998). Because the parties agree there are no material issues of fact, we review *de novo* the district court's legal conclusions. Thus, we review *de novo* the district court's legal conclusion that the Fund's decision was arbitrary and capricious. *Sandoval v. Aetna Life and Cas. Ins. Co.*, 967 F.2d 377, 380 (10th Cir. 1992).

B.   Arbitrary and Capricious

The Fund contends that the district court erroneously relied on the 1999 SPD, rather than the 2003 SPD. It contends that a reasonable interpretation of the subsequent Plan and SPD amendments would allow the Fund to require execution of the terms of its SAC.

We agree with the district court that the controlling document is the 1999 SPD.[2] "Because plan administrators have an obligation imposed by ERISA to operate the plan according to current plan documents, a *post hoc* amendment clearly cannot alter a plan provision in effect at the time performance under the

_____

[2]   However, our decision would be same under the 2003 SPD because it did not provide the Fund the right to require a plan participant to file a third-party action at his or her own expense.

plan became due." *Member Services Life Ins. Co., v. American National Bank and Trust Co.*, 130 F.3d 950, 957 (10th Cir. 1997).

The Fund contends that the 2003 SPD controls because it provided notice of the amendments within the 120 days following their adoption as required by ERISA, 29 U.S.C. § 1024(b)(1), and the SAC was signed after the effective date of the 2003 SPD. However, Plaintiff's benefits were vested prior to the effective date of the 2003 SPD. A welfare plan's benefits vest when performance is due. *Member Services*, 130 F.3d at 956. Under the 1999 SPD, benefits vest upon receipt of written proof satisfactory to the Fund. The Fund's November and December 2002 communications to Plaintiff specifically rely on the 1999 SPD as authority for its demand that Plaintiff and his wife sign the SAC. Rec. at 161 and 167. The communications also notified Plaintiff that benefits would not be paid unless and until the SAC was signed. The Fund's January 7, 2003, letter announced its decision on the administrative appeal, reiterated its demand that Plaintiff sign the previously provided SAC, and declared that the failure to do so would result in a loss of benefits.

The fact that the SAC was finally signed shortly after the effective date of the new amendments does not mean that the Fund can apply those new amendments to Plaintiff's previously vested benefits. Because the Fund cannot unilaterally change the terms of its performance after performance is due, we find

no error in the district court's holding that the 1999 SPD controls.

We turn to the issue of whether the Fund's interpretation of its SPD was arbitrary and capricious. The 1999 SPD provides:

> This Plan shall be subrogated and may, if deemed appropriate by the Plan, succeed to the individual's right of recovery from a third party for incurred Hospital, medical and surgical expenses. The individual shall pay over to the Plan all sums recovered by suit, settlement or otherwise in an amount equal to such services or benefits which the Plan provided. . . .

> * * *

> The Fund may, in its sole discretion, commence an independent action based on the Fund's right of subrogation against a third party for medical, hospital and surgical expenses incurred by the Eligible Employee and paid by the Fund regardless of whether the Eligible Employee has commenced his/her own action against any third party.

> If a Participant is injured or becomes ill due to or as a result of the act or omission of any other person and if . . . benefits are provided to or on behalf of the Participant by this Plan due to or as a result of such injury or illness, then to the extent that the Participant recovers similar medical expenses for the same injury or illness from any responsible third party, or the third party's insurance carrier, this Plan shall be entitled to receive a refund from the Participant in an amount equal to such services or benefits which this Plan provided. This Plan may file a lien for such payment. The Participant shall, upon request, execute and deliver such instrument or papers as may be required and do whatever else is necessary to carry out this provision.

Rec. at 204. The 1999 SPD does not address attorney's fees or other costs of litigation.

In support of its position that it did not act arbitrarily and capriciously in

requiring Plaintiff to sign the SAC providing that Plaintiff must bring a third-party action at his own expense, the Fund relies upon our unpublished case, *Alves v. Silverado Foods, Inc.*, 6 Fed. Appx. 694 (10th Cir. 2001). It also submits as supplemental authority our recent case *Administrative Committee of the Wal-Mart Associates Health and Welfare Plan v. Willard*, 393 F.3d 1119 (10th Cir. 2004) and the Fourth Circuit case *Kress v. Food Employers Labor Relations Ass'n.*, 391 F.3d 563 (4th Cir. 2004). We find those cases to be distinguishable.

In *Alves*, we affirmed the district court's granting of summary judgment in favor of a plan on a claim that it breached its fiduciary duty when it refused to pay claims until the beneficiaries signed an agreement recognizing its rights to subrogation and reimbursement. However, in *Alves*, the district court found that the reimbursement agreement "did not broaden the Plan's rights from those in the SPD." 6 Fed. Appx. at 705.

Thus, *Alves* is distinguishable because, in the present case, the Fund interpreted the 1999 SPD in a way that attempted to materially broaden its rights by conditioning benefits on the participant's signing an agreement that added an entirely new requirement not found in the Plan or the 1999 SPD. For the same reason, the *Willard* case, *supra*, is inapposite because it also did not involve a plan's imposition of conditions that broadened its rights from those in the SPD.

In *Kress*, the Fourth Circuit held it was not an ERISA violation for a fund

-10-

to require the participant and his attorney to sign a subrogation agreement agreeing to reimburse the plan first out of any recovery because that condition was plainly required in the SPD. 391 F.3d at 567-68. Thus, there was no attempt in *Kress* to broaden rights from those in the plan and the SPD.

Further distinguishing Kress are two facts. First, the accident-related medical expenses at issue in *Kress* were, unlike the benefits in the present case, expenses that were not covered by the plan. Instead the expenses were advanced as an "interest free loan" from the fund to employees injured by third parties. 391 F.3d at 568. Second, the subrogation agreement in *Kress* did not *require* that a participant file a third-party action because even if the participant "did accept the advance, he was under no obligation to sue." *Id.* at 570 n.2; *see also id.* at 570 ("If the participant and his attorney conclude that private litigation will not produce a sufficient recovery to make the litigation worthwhile, they need not bring the case."). Because the injured plan participant could choose not to file a third-party action, the *Kress* court held it was not unconscionable to require a subrogation agreement from a participant and his attorney providing that any attorney's fees be subordinated to the Plan's right to reimbursement. *Id*. at 570-71.

In the present case, as previously noted, the SAC attempted to broaden the Fund's rights by imposing a new requirement on Plaintiff as a condition for

receiving benefits. Despite requiring the unwilling Plaintiff to file an action, the SAC provides that the Fund will not pay any portion of the litigation costs and fees. Because that requirement was not contained in the 1999 SPD, it was arbitrary and capricious for the Fund to impose the new condition as a prerequisite to paying Plaintiff his benefits under the 1999 SPD.

C.    Appropriate Equitable Relief

The Fund contends that the district court erred by rescinding the subrogation contract because (1) rescission is not a remedy under subsection 29 U.S.C. § 1132(a)(3); (2) the district court lacked authority to impose rescission under that section; (3) Plaintiff seeks monetary not equitable relief; and (4) Plaintiff did not establish the prerequisites for a rescission claim.

Plaintiff brought this action under ERISA, 29 U.S.C.§ 1132(a):

(a) A civil action may be brought ...

> (3) by a participant, beneficiary, or fiduciary
>
> (A) to enjoin any act or practice which violates any provision of [Title I of ERISA] or the terms of the plan, or
>
> (B) to obtain other appropriate *equitable relief* (i) to redress such violations or (ii) to enforce any provisions of [Title I of ERISA] or the terms of the plan[.]

29 U.S.C.§ 1132(a)(3)(A) and (B) (emphasis added).

Other circuits have determined that in appropriate circumstances, rescission

-12-

may be "appropriate equitable relief" within the meaning of § 1132(a)(3)(B). *See Griggs v. E.I. DuPont and Nemour & Co.*, 385 F.3d 440, 446 n.3 (4th Cir. 2004) (collecting cases).

However, we need not address the issue because we find that the district court's resolution was pure equitable relief within its authority under § 1132(a)(3)(B). The district court determined (1) that the Fund's interpretation of the SPD was unreasonable; (2) that the Fund acted arbitrarily and capriciously in requiring the SAC; and (3) that the Plaintiff would not have filed the third-party action but for the fact that he was compelled to do so by the SAC. The Fund's action provided a basis for equitable relief under § 1132(a)(3)(B). Accordingly, the district court acted to restore the parties to the positions they would have occupied had the Fund not acted arbitrarily and capriciously in conditioning payment of vested benefits on signing a contract that imposed terms not contained in the Plan or disclosed in the 1999 SPD.

Prior to the signing of the SAC, the parties were in the following position: the Fund had a subrogation right to "all sums" recovered in an amount equal to the benefits and a refund right to the amount equal to such services or benefits that the Plan provided. Rec. at 203-04. Plaintiff had an obligation to cooperate in such subrogation and refund. However, he also had the right to decide whether or not to bring a third-party action, depending on how he evaluated factors such

-13-

as the stress of litigation, the strength of his case, and the likelihood of recovery. Among the factors Plaintiff would have to consider in deciding whether or not to bring a third-party action was that the Fund was entitled to a full refund in the amount of any benefits paid. If Plaintiff choose not to file an action under these circumstances, he would incur no attorney's fees or other litigation-related expenses. The Fund always had the right to file its own third-party action for subrogation, in which case the Fund would bear its own costs and fees incurred as a result of its decision to file an action.

In its equitable resolution, the district court imposed responsibility for the attorney's fees and costs on the party that made the decision to file the third-party action–the Fund. At the same time, the district court recognized the Fund's right under the 1999 SPD to a repayment in the amount of the benefits it paid Plaintiff by requiring that Plaintiff repay the Fund the full remainder of the settlement.

As we recently noted, this type of equitable resolution is available under § 1132(a)(3). In *Callery v. United States Life Insurance Company in the City of New York*, 392 F.3d 401 (10th Cir. 2004), we examined "appropriate equitable relief" under § 1132(a)(3) and found that the various remedies sought were not available because the employee was in actuality seeking money damages, a classic form of legal relief. *Id*. at 404-05. However, we distinguished the types of relief sought in *Callery* from the clear equitable remedy of the type applied in our

-14-

earlier case, *Downie v. Independent Drivers Ass'n Pension Plan,* 934 F.2d 1168 (10th Cir. 1991). In *Downie*, as in the present case, a plan acted arbitrarily and capriciously and violated the participant's rights under the plan.

> In *Downie,* the court used its equitable powers to restore the parties to their original positions in order to affect the beneficiary's ability to receive future payments. *Id.* at 1170-71. This is a clear equitable remedy and is distinct from the relief sought in this case.

*Callery*, 392 F.3d at 407.

The fact that the relief sought in the present case involved the attorney's fees incurred in the third-party action does not mean that Plaintiff sought monetary relief instead of equitable relief within the meaning of §1132(a)(3). As we recently noted, "any equitable relief, including those forms explicated by the Court as available under [§1132(a)(3)], must involve the direct or indirect transfer of money, and we cannot read the statute to proscribe all forms of relief." *Administrative Committee of the Wal-Mart Associates Health and Welfare Plan v. Willard*, 393 F.3d at 1125 (plan administrator's suit for equitable restitution is "appropriate equitable relief").

We hold that on the unique facts of this case, the district court's action granted "appropriate equitable relief" within the meaning of 29 U.S.C. §1132(a)(3)(B).

D.    Common Fund

The Fund also contended that the district court erred by applying the

common fund doctrine. However, as we have determined that the district court's resolution was equitable relief within the meaning of 29 U.S.C.§ 1132(a)(3), the common fund doctrine is not dispositive.

E.      Attorney's Fees under § 1132(g)(1)

The Fund contends that the district court erred in its Clarification Order by awarding Plaintiff attorney's fees incurred in the present case pursuant to §1132(g)(1) because it did not apply the five-factor test to determine whether an award of attorney's fees is appropriate. *See Gordon v. U.S. Steel Corp.*, 724 F.2d 106, 109 (10th Cir. 1983) (applying five-factor test from *Eaves v. Penn*, 587 F.2d 453, 463 (10th Cir. 1978)). Plaintiff contends that the Fund waived this argument by failing to raise it below.

Section 1132(g)(1) of ERISA provides:

> In any action under this subchapter . . . by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party.

*Id.*

We consider each case individually in determining whether to exercise our discretion to consider a question raised for the first time on appeal. *Tele-Communications, Inc. v. C.I.R.*, 104 F.3d 1229, 1232 (10th Cir. 1997). Such determination must begin with recognition that sound policy supports the proposition that an appellate court will not consider an issue raised for the first time on appeal.

-16-

> Review of issues not raised below would require us frequently to remand for additional evidence gathering and findings; would undermine the need for finality in litigation and conservation of judicial resources; would often have this court hold everything accomplished below for naught; and would often allow a party to raise a new issue on appeal when that party invited the alleged error below. *Lyons v. Jefferson Bank & Trust,* 994 F.2d 716, 721 (10th Cir. 1993).
>
> This rule is particularly apt when dealing with an appeal from a grant of summary judgment, because the material facts are not in dispute and the trial judge considers only opposing legal theories.

*Id*.

The Fund contends that it raised the issue of the failure to apply the five-factor test below, citing its one-sentence general objection to any award of attorney's fees contained in its Response to Plaintiff's Application for Attorney's Fees. However, raising a theory in "a vague and ambiguous way" or by "raising a related theory" is insufficient to preserve an issue for appeal. *Id*. at 1234 (citing *Lyons v. Jefferson Bank & Trust*, 994 F.2d 716, 722 (10th Cir.1993)). Our review of the record reveals that the argument that the district court failed to apply the five-part test was never raised below. Because the issue was never presented to the district court, it did not have the opportunity to rule on the issue, and the issue cannot be raised in this appeal.

## CONCLUSION

We AFFIRM the judgment of the district court.