**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff,**

v.

**BURLINGTON NORTHERN & SANTA FE RAILWAY COMPANY, Defendant.**

No. CIV–04–660–T.

United States District Court, W.D. Oklahoma.

Dec. 8, 2005.

Holly Waldron Cole, EEOC-OKC, Oklahoma City, OK, Toby W. Costas, EEOC–DALLAS, Dallas, TX, for Plaintiff.

Stephen F. Fink, Bryan P. Neal, Thompson & Knight, Dallas, TX, Lawrence M. Stroik, Fort Worth, TX, Roberta Fields, Patricia L. Franz, Rainey, Ross, Rice & Binns, Oklahoma City, OK, for Defendant.

### ORDER

RALPH G. THOMPSON, District Judge.

Before the court is the motion [Doc. No. 36] of defendant Burlington Northern and Santa Fe Railway Company ("Burlington") for summary judgment on the claim asserted by the Equal Employment Opportunity Commission ("EEOC"). Pursuant to Fed.R.Civ.P. 56(c), Burlington argues that the undisputed material facts in the record establish that it is entitled to judgment as a matter of law on the EEOC's claims.

The EEOC brings this action on behalf of Thomas Freeman ("Freeman"), alleging that Burlington violated the Americans with Disabilities Act of 1990 ("ADA") by declining to employ Freeman as a Conductor Trainee because it "regarded him as disabled." Burlington initially moved to dismiss the action, arguing that the EEOC could not satisfy the ADA requirements of a claim for relief based on a "regarded as" theory. That motion was denied because its adjudication required consideration of material outside the pleadings, thus rendering it inappropriate for consideration in a motion to dismiss. The parties proceeded to conduct discovery on this issue.

In its motion for summary judgment, Burlington argues that the EEOC cannot prevail on the claim because it cannot show that Burlington regarded Freeman as disqualified from performing a class of jobs or a broad range of jobs in various classes. Because the EEOC must prove that contention in order to establish that Burlington discriminated by regarding Freeman as disabled, Burlington argues that the EEOC cannot prove disability discrimination as a matter of law. The parties have fully briefed this issue and have submitted an extensive record.

Summary judgment may be granted where the undisputed material facts establish that one party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A material fact is one which may affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). To avoid summary judgment, plaintiffs must present more than a "mere scintilla" of evidence; the evidence must be such that "a reasonable jury could return a verdict for the nonmoving party." *Id.* The facts in the record and reasonable inferences therefrom must be viewed in the light most favorable to the nonmoving party. *MacKenzie v. City & County of Denver,* 414 F.3d 1266, 1273 (10th Cir.2005). Where the undisputed facts establish that a plaintiff cannot prove an essential element of a cause of action, defendant is entitled to judgment on that cause of action. *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548.

In this case, it is undisputed that Freeman applied for the Conductor Trainee position with Burlington, and he did not apply for other jobs. The parties also agree that, as the job title implies, the position is that of a railroad conductor in training; thus, the qualifications for a Conductor Trainee and a Conductor are essentially the same. It is also undisputed that a conditional offer of employment was made to Freeman, pending a physical examination, drug test, and background check. Further, the parties agree that Burlington's Chief Medical Officer, Dr. Michael Jarrard ("Dr.Jarrard"), concluded that Freeman was not qualified for the position.

It is not disputed that Burlington's job posting for the position of Conductor Trainee includes a description of the duties to be performed in that position; among the duties specified are the following:

> Gets on and off equipment while train is performing industrial station or yard switching, to set or release hand brakes or other duties. Rides moving car by hanging on grab irons or ladder, sometimes for extended periods of time.

Burlington Job Posting, Burlington Exhibit 3. Burlington's job profile for the position of Conductor Trainee also states, in the description of job duties, that the employee "Rides moving car by hanging on grab irons or ladder, sometimes for extended periods of time." Job Profile, Burlington Exhibit 4, page 2.

The parties agree that, as required by Burlington, Freeman completed certain tests and courses required for his application for a Conductor Trainee position; he also had a physical examination. During this period, Freeman told Burlington that he had previously suffered an injury to his left arm. Upon Burlington's request, he submitted medical records, and the records reflected that, although he had been released to work, he had weakness in his left arm and diminished grip strength in his left hand. Burlington's Chief Medical Officer, Dr. Jarrard, determined that these conditions disqualified Freeman for "train service" jobs with Burlington because an

essential function of those jobs is the ability to hold on to the exterior of a moving train; Dr. Jarrard notified Freeman that his condition created a "significant risk that a serious or potentially fatal accident may occur while performing train service work." January 10, 2003 Letter from Dr. Jarrard to Freeman, submitted as EEOC Exhibit 4.

Conductors and Conductor Trainees fall into a Burlington job category known as "train service" employees. According to Burlington, the jobs categorized as train service positions are Conductor Trainee, Conductor, Brakeman, Switchman/Switch Foreman, and Hostler[1]. Deposition of Burlington Human Resources Director Terrill L. Morgan, Burlington Exhibit 2, page 65, lines 22–24. (Hereinafter "Morgan dep."). These are the only positions that include the job requirement of holding on to the grab bar or ladder on the exterior of a moving train. *Id.,* page 90, lines 14–16. Many other jobs involve climbing on to the exterior of the train and/or holding on to the exterior grab bars or ladder; however, those jobs do not *require* the employee to do so while the train is moving. Morgan dep., page 90, lines 14–25; page 91, lines 1–3. Climbing on to a stationary train is an activity performed by almost all Burlington employees, regardless of their specific jobs; employees in many positions may also hold on to grab

bars or ladders on the train exterior while performing their duties. Morgan Declaration, ¶ 5, Burlington Exhibit 1. Employees in positions other than train service may sometimes hold on to the exterior of a moving train; however, they are not required to do so as a part of their duties. *Id.*

When he was not selected for the Conductor Trainee position, Freeman filed an EEOC complaint alleging both age and disability discrimination as the motivations for Burlington's failure to hire him. The record contains no evidence that the EEOC made a finding regarding his age discrimination claim. However, the EEOC issued a Determination that Burlington's failure to hire Freeman constituted disability discrimination because Burlington regarded Freeman as disabled. In its Determination, the EEOC acknowledged that Burlington told Freeman that he was "not qualified for train service employment" with Burlington because of his medical condition. EEOC Determination, submitted as a part of the documents comprising Burlington Exhibit 1. The EEOC Determination also stated that Burlington defined "train service work" to include the job positions of Conductor Trainee, Brakeman, Switchman, Conductor, and Engineer[2]. *Id.* The EEOC opined that these positions constituted "a broad class of

---

1. Although Burlington's Human Resources Director included the job of hostler in the train service category during his deposition, Burlington's response to the EEOC complaint and other documents in the record do not include that position in the train service category. Weighing the facts in favor of the EEOC, the court will consider the job of hostler to be a train service job for purposes of this motion. In addition, the court has identified the position of switchman as "switchman/switch foreman" because the testimony references both positions.

2. The undisputed evidence shows that the position of railroad or locomotive engineer does not involve all physical abilities required of other train service positions. However, Burlington included it in the train service category because the collective bargaining agreement to which it is subject specifies that the position of engineer is the final step in a progression which requires that, to be eligible for training as a railroad or locomotive engineer, an individual must have held the positions of Conductor Trainee/Conductor or Brakeman/Switchman. See June 27, 2003 letter to EEOC from Burlington's Director of Equal Opportunity, EEOC Exhibit 8, ¶ 2.

jobs," noting that Burlington employed "over 16,000 in these positions." *Id.* The EEOC concluded that Burlington regarded Freeman as disabled, "that is, substantially limited in the major life activity of working in a broad range of train service jobs." EEOC Determination, Burlington Exhibit 1. The EEOC further concluded that Burlington had "failed to establish with objective evidence that [Freeman] posed a direct threat of significant risk of substantial harm to the health or safety of himself or others." *Id.* The EEOC then filed this lawsuit, alleging that Burlington discriminated against Freeman. It contends that Freeman is disabled, as defined by the ADA, because Burlington "regarded him" as disabled. As a result, the EEOC alleges, Burlington violated the ADA when it failed to hire him as a Conductor Trainee.

To be a covered employee under the ADA, an individual must be a "qualified individual with a disability." 42 U.S.C. § 12112(a); *Cleveland v. Policy Management Sys. Corp.,* 526 U.S. 795, 806, 119 S.Ct. 1597, 143 L.Ed.2d 966 (1999). A disability includes: a) a physical or mental impairment that substantially limits one or more of the major life activities of the individual; or 2) a record of such an impairment; or 3) being "regarded as" having such an impairment. 42 U.S.C. § 12102(2).

■ In this case, the EEOC's sole basis for alleging that Freeman is covered by the ADA is its contention that Burlington "regarded" Freeman as being substantially limited in his ability to perform the major life activity of working[3]. A person is "regarded as disabled" for ADA purposes when "(1) a covered entity mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities, or (2) a covered entity mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities. " *Kelly v. Metallics West, Inc.,* 410 F.3d 670, 675 (10th Cir.2005), *quoting Lanman v. Johnson County, Ks.,* 393 F.3d 1151, 1156 (10th Cir.2004) and *Sutton v. United Air Lines. Inc.,* 527 U.S. 471, 489, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999); *see also* 29 C.F.R. § 1630.2(1).

■ To be substantially limited in the major life activity of working, the employee must be unable to perform either " a class of jobs or a broad range of jobs in various classes." *Doebele v. Sprint/United Management Co.,* 342 F.3d 1117, 1133 (10th Cir.2003), *citing Sutton,* 527 U.S. at 491–92, 119 S.Ct. 2139,(quoting 29 C.F.R. pt. 1630, App. § 1630.2(j)(3)(I)). To show that an employee is "regarded as" disabled because he is substantially limited in the major life activity of working, the EEOC must therefore establish that the employer regarded the employee as having an impairment substantially limiting his ability to perform a class of jobs or a broad range of jobs in various classes; it is not enough to show that he is substantially limited in his ability to perform the specific tasks required of a single position. *Doebele,* 342 F.3d at 1122, *citing Sutton,* 527 U.S. at 491–92, 119 S.Ct. 2139; *see also McKenzie v. Dovala,* 242 F.3d 967, 970–72 (10th Cir. 2001).

---

**3.** According to the EEOC regulations, working is a major life activity. 29 C.F.R. § 1630.2(*l*). As Burlington points out, the United States Supreme Court has expressed reservations about the propriety of including working in this category. *Sutton v. United Air Lines, Inc.,* 527 U.S. 471, 492–93, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999). However, the court has not expressly decided that issue, and Burlington does not challenge it in its motion. Accordingly, for purposes of this motion, the court will consider working to be a major life activity.

The issue raised by Burlington's motion and the EEOC's response is whether Burlington's decision regarding Freeman applies to a "class of jobs" or a "broad range of jobs in a class." Burlington argues that the evidence shows that its decision does not satisfy the ADA definition for either category, while the EEOC contends that the requirements are applicable to a class of jobs.

The ADA regulations define a "class of jobs," for purposes of determining if an individual is substantially limited in the major life activity of working, as:

[t]he job from which the individual has been disqualified because of an impairment, and the number and types of jobs utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the individual is also disqualified because of the impairment.

29 C.F.R. § 1630.2(j)(3)(ii)(B). A "broad range of jobs in various classes" is defined as:

[t]he job from which the individual has been disqualified because of an impairment, and the number and types of other jobs not utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the individual is also disqualified because of the impairment.

29 C.F.R. § 1630.2(j)(ii)(C). The regulations further state that the "inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." 29 C.F.R. § 1630.2(j)(3)(I). Thus, an employer does not violate the ADA "regarded as" provision if it believes that a limitation disqualifies an individual from performing certain functions applicable to a particular job. *Sutton v. United Air Lines, Inc.,* 130 F.3d 893, 904 (10th Cir.1997). Furthermore, "the inability to perform one aspect of a job while retaining the ability to perform the work in general does not amount to substantial limitation of the activity of working." *MacDonald v. Delta Air Lines, Inc.,* 94 F.3d 1437, 1445 (10th Cir.1996), *quoting Dutcher v. Ingalls Shipbuilding,* 53 F.3d 723, 727 (5th Cir.1995).

Although Burlington argues that its decision regarding Freeman would disqualify him only from the train service category of jobs, the EEOC contends that he would be disqualified from a number of other Burlington jobs. The EEOC argues that many other positions involve climbing on to a train and grabbing on to bars or ladders; it also contends that non-train service employees hold on to the exterior of moving trains. In support of this contention, the EEOC offers affidavits of two Burlington non-train service employees who state that they have observed employees in a variety of job positions climbing onto a train, grabbing on with one hand, and sometimes riding on the exterior of a moving train; they also state that they have done so. *See* Declaration of Maria Buckles, EEOC Exhibit 10; Declaration of Robert Long, Jr., EEOC Exhibit 11. Thus, the EEOC contends, Freeman's impaired grip strength and arm strength would disqualify him from Burlington positions other than those in the train service category.

According to the evidence before the court, the only Burlington positions which include as a job requirement the ability to grasp and hold on to a moving train, sometimes for an extended period of time, are Conductor Trainee/Conductor, Brakeman, Switchman/Switchman Foreman, and Hostler. Declaration of Burlington's Director of Human Resources, Terrill L. Morgan, Burlington Exhibit 1,¶5 (hereinafter, "Morgan Declaration"); Morgan dep., page 65, lines 22–24, Burlington Exhibit 2. Although Burlington employees holding

other jobs may be required to get on and off the train, and may have to grasp a grab iron or ladder when doing so, there is no evidence that they are *required,* as an essential function of their job, to be able to continually grasp the exterior of the train while it is moving.

The EEOC contends that, in his deposition, Morgan testified that many other positions are included in the category of train service. EEOC brief, page 3, citing Morgan dep., pages 23, 49, 50, 75, and 92–93. Morgan's deposition testimony includes extensive discussion of many job positions at Burlington and, as he expressly stated and the EEOC acknowledges, there is no written definition of "train service." He also testified that some employees may use the term loosely and refer to some positions as train service other than the specific positions which the parties agree are included. Morgan dep., p. 22–23, 65. Contrary to the EEOC's argument, he did not state in his deposition that Burlington categorized additional jobs as train service. Moreover, as Burlington points out, the critical determination made by Burlington's Chief Medical Officer was Freeman's ability to perform the essential functions of the jobs in train service which require the ability to hold on to the exterior of a moving train.

The court concludes that the EEOC's argument and the employee declarations it submits do not support the EEOC's contention. Although Burlington employees in a variety of job positions may choose to grab on to a moving train and/or otherwise grasp the exterior of the train, the issue is not whether such conduct may occur. Rather, the issue is whether the ability to grab and hold onto a moving train is a requirement of the job. The EEOC's evidence does not show that employees in other job positions are required to have that ability; however, the ability to do so is a job *requirement* for the position of

Conductor Trainee, and that is the only position for which Freeman was an applicant.

The EEOC also repeatedly argues that Burlington considered Freeman's impairments as precluding him from holding positions that would require climbing onto a train, an activity required of the majority of Burlington employees. However, the EEOC's argument is not supported by the record. The record shows that Burlington's decision was not based only on Freeman's grip strength, but on the combination of his weakened left arm and diminished left hand grip strength. The evidence does not support the contention that Freeman was considered disqualified from performing any job that required the ability to climb onto a train. In fact, the evidence shows that Burlington considers him qualified for several other positions which do not require the physical ability to grab and hold onto a moving train on a regular basis. Human Resources Director Morgan cited several examples, including but are not limited to carman, mechanical laborer, maintenance-of-way laborer, truck driver, dispatcher, assistant signalman, and clerk. Morgan Declaration, ¶ 9, Burlington Exhibit 1; Morgan dep., p. 176, lines 7–24.

The court concludes that the evidence establishes that the only Burlington jobs from which Freeman is disqualified because of Burlington's decision are those in the category of train service and that those jobs include Conductor Trainee/Conductor, Brakeman, Switchman/ Switch Foreman and Hostler. Thus, the question is whether train service constitutes a "class of jobs."

To support its claim that train service is a class of jobs, the EEOC appears to rely heavily on the number of Burlington employees in train service nationally. In its Determination, the EEOC expressly

noted that Burlington employs "over 16,-000 in these positions." EEOC Determination, page 2, included in Burlington Exhibit 1. The EEOC concluded that the train service positions constitute a sufficient number of Burlington's work force to constitute a "class of jobs." *Id.* Burlington admits that, at the time of its decision regarding Freeman, it employed 16,050 full-time or part -time employees in the train service positions throughout the United States[4] and that number constitutes almost half of its 37,529 employees. *See* Burlington answer to plaintiff's Interrogatory No. 6, EEOC Exhibit No. 6, page 5.

Despite the EEOC's emphasis on the number of train service employees, it has not submitted authority stating that the number of employees, without more, creates a class of jobs. The court has located no authority which would support such conclusion. In fact, some courts have expressly rejected the argument that numbers alone create a class of jobs. *See, e.g., EEOC v. J.B. Hunt Transport, Inc.,* 321 F.3d 69,71, 75–77 (2d Cir.2003); *Chandler v. City of Dallas,* 2 F.3d 1385, 1391 n. 29 (5th Cir.1993). Instead, the courts considering whether an individual is regarded as disqualified from a class of jobs have focused on the duties required to be performed in the jobs, including the specific skills required of the disqualified person.

Decisions in this circuit and others show that, where an individual cannot perform a specific required task in a particular position or positions but can perform other tasks, he is not considered excluded from a "class of jobs." For example, an aircraft mechanic who was disqualified from a position requiring the taxiing of aircraft be-

cause of his vision impairment was not substantially limited in the activity of working because his skills allowed him to perform other aircraft mechanic jobs not requiring that specific function. *MacDonald,* 94 F.3d at 1445. According to the Tenth Circuit, "taxiing aircraft is neither 'a class of jobs' nor 'a broad range of jobs in various classes,' but is instead 'a single, particular job.'" *Id.,citing* 29 C.F.R. § 1630.2(j)(3)(I).

Similarly, a welder whose arm injury was determined to preclude her from a welding position requiring climbing was not regarded as disabled based on the life activity of working because her skills allowed her to perform other welding jobs not requiring the ability to climb. *Dutcher,* 53 F.3d at 727. The Tenth Circuit has also held that the fact that an employer disqualified an individual from a job requiring lifting did not support a claim that the employer regarded him as disabled; the "belief that [the employee] could no longer perform a job that required lifting in excess of [his] capabilities does not mean that [the employer] regarded [him] as disabled" because he was able to perform other tasks which allowed him to work in other positions for the same employer. *Rakity v. Dillon Companies,* 302 F.3d 1152, 1164 (10th Cir.2002).

Other circuits have applied a similar analysis to determine the existence of a class of jobs. *See, e.g.,Rossbach v. City of Miami,* 371 F.3d 1354, 1361 (11th Cir. 2004); *Epps v. City of Pine Lawn,* 353 F.3d 588, 590 (8th Cir.2003); *Sheehan v. City of Gloucester,* 321 F.3d 21, 25–26 (1st Cir.2003). (Generally holding that the job of police officer is too narrow a category to constitute a class of jobs for ADA pur-

---

4. In its brief, the EEOC states that Morgan testified that 20,000 individuals occupy train service positions. However, the deposition pages which it cites as supporting that testi-

mony do not include that statement. See Morgan dep., pages 72–73, EEOC Exhibit 1. No other exhibit includes a reference to 20,-000 employees.

poses, as inability to perform specific functions unique to that job does not exclude the individual from working in all law enforcement positions.)

The United States Supreme Court applies the same analysis. *See, e. g., Murphy v. United Parcel Service,* 527 U.S. 516, 119 S.Ct. 2133, 144 L.Ed.2d 484 (1999). In *Murphy,* a United Parcel Service mechanic whose position required him to drive commercial vehicles was determined, under Department of Transportation ("DOT") rules, to be ineligible to drive a commercial vehicle because of his hypertension. Following his termination, he alleged that his employer regarded him as disabled because it believed he was substantially limited in the major life activity of working. 527 U.S. at 519–20, 119 S.Ct. 2133. Affirming the Tenth Circuit's decision, the court held that his inability to obtain DOT certification limited him from working in a mechanic position that required such certification; however, it did not limit him from other mechanic jobs for which he had training and skills which he remained capable of performing. *Id.* at 524, 119 S.Ct. 2133. In fact, the evidence showed that his employer maintained numerous other job positions for which he would be qualified regardless of his hypertension. 527 U.S. at 524–25, 119 S.Ct. 2133. "Consequently, in light of petitioner's skills and the array of jobs available to petitioner utilizing those skills, petitioner has failed to show that he is regarded as unable to perform a class of jobs." *Id.* at 525, 119 S.Ct. 2133.

In this case, when Burlington notified Freeman that it considered him disqualified for the Conductor Trainee position, it specifically stated that he was disqualified from working in "train service" and referenced the "essential function" for train service work of holding onto a moving train car. *See* January 10, 2003 letter to Freeman from Dr. Jarrard, EEOC Exhibit 4. Contrary to the EEOC's argument, the evidence does not show that Burlington considered Freeman disqualified from all jobs which might involve climbing on to a train or grasping a hand bar or similar feature. The evidence shows that the only jobs for which Burlington considered Freeman to be unable to perform because of his weakened left arm and diminished left hand grip strength are those which require grabbing on to, and holding on to, a moving train. This distinction is significant because, as Burlington indicates, it is based on safety considerations which are not applicable to other jobs which do not require this ability. The fact that other Burlington employees, including those submitting the declarations labeled as EEOC Exhibits 10 and 11, may perform these activities is not persuasive because there is no evidence that they are *required* to hold on to the exterior of a moving train in order to perform their job duties. That employees in other positions may choose to perform tasks that they are not required to perform does not mean that those tasks are essential to jobs other than the train service positions identified by Burlington. In fact, as noted above, the evidence shows that Human Resources Director Morgan considered Freeman qualified for a number of other Burlington positions not requiring the job function at issue.

The EEOC attempts to distinguish the authorities cited by Burlington as inapplicable to train service work, and offers the opinion of a proposed expert witness in further support of its contentions. *See* EEOC Exhibits 12 and 13. The witness, an EEOC economist, submits a written report and opines that Freeman was regarded as being limited in performing a class of jobs. The report reflects, however, that she relies heavily on the conclusion that Freeman was considered ineligible to perform any job that might include climb-

ing onto a train or grabbing exterior bars or ladders. As discussed herein, the evidence does not support that broad view because the limitation cited by Burlington is the ability to hold on to the exterior of a moving train, a requirement applicable to only train service positions. Thus, the witness's discussion of the many other positions which involve climbing onto a train or gripping handles does not apply.

Having fully reviewed the evidence and the applicable law, the court concludes that the EEOC has not submitted evidence sufficient to create a material fact dispute regarding the existence of a class of jobs as that term is defined by the ADA. The evidence shows that Burlington determined Freeman was disqualified from selection for the only job for which he applied, Conductor Trainee, and the other positions in the train service category. That decision was based on the fact that those jobs, unlike other Burlington jobs, expressly require the employee to be able to hold on to the exterior of a moving train. Burlington determined that, due to his weakened left arm and diminished left hand grip strength, Freeman could not safely perform that required job function. The court concludes that this decision does not exclude Freeman from consideration for other Burlington jobs not requiring that skill; neither does the category of train service constitute a class of jobs as that term is defined by the ADA.

The EEOC also argues in its response brief that Burlington's decision would disqualify Freeman from working in a "broad range of jobs in various classes," an alternative means of showing substantial limitation in the major life activity of working, as required by the ADA. As Burlington points out, the EEOC Determination cites only a "class of jobs" as the basis for this element. However, even if the Determination can be construed as also based on a finding that Freeman was regarded as limited from working in a broad range of jobs in various classes, the evidence does not support that conclusion.

The EEOC's argument, including its proposed expert witness testimony, is based on its contention that Burlington determined Freeman to be disqualified from jobs requiring gripping and climbing onto equipment. As discussed above, the evidence before the court does not support that contention. That Burlington considered him disqualified from performing the essential function of holding on to the exterior of a moving train does not render him unable to perform numerous other functions for which he is otherwise qualified. The EEOC's evidence does not support its contention.

Accordingly, Burlington's motion for summary judgment [Doc. No. 36] is GRANTED. Based on the parties' representations and the record before the court, the court believes that this issue is dispositive of the only claim asserted by the EEOC. Therefore, it should conclude this litigation. Because the motion and preceding discovery are limited, however, the parties are directed to advise the court if there are any remaining issues for discovery and trial. The parties shall do so by written submission no later than December 16, 2005.