**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**November 29, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION,

Plaintiff-Appellant,

v.

BURLINGTON NORTHERN AND
SANTA FE RAILWAY COMPANY,

Defendant-Appellee.

No. 06-6074
(D.C. No. 04-CV-660-T)
(W.D. Okla.)

---

**ORDER AND JUDGMENT**[*]

---

Before **O'BRIEN** and **BRORBY**, Circuit Judges, and **BROWN**,[**] District Judge.

---

The Equal Employment Opportunity Commission (EEOC) brought this

action on behalf of Thomas Freeman, who applied to Burlington Northern and

Santa Fe Railway Company (Burlington) for the position of conductor trainee.

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

[**] The Honorable Wesley E. Brown, Senior District Judge, District of Kansas, sitting by designation.

The EEOC now appeals the district court's entry of summary judgment on its claim that Burlington's failure to hire Mr. Freeman violated the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101-12213. *See EEOC v. Burlington N. & Santa Fe Ry. Co.*, 406 F. Supp. 2d 1228 (W.D. Okla. 2005). We affirm.

## I.

After completing a six-week course designed to train individuals to be conductors and while working as a conductor trainee for a smaller railroad, Mr. Freeman applied to Burlington for its posted openings for the position of conductor trainee. At Burlington, a conductor trainee sets or releases hand brakes and perform other duties. The employee is required to "ride[] moving car by hanging on grab irons or ladder, sometimes for extended period of time." Jt. App. at 126, 130. Burlington offered the job to Mr. Freeman, conditioned on his passing a physical examination, strength test, drug screen, and background check. Mr. Freeman apparently passed all these tests.

On a medical questionnaire, however, Mr. Freeman explained that he had previously suffered an injury to his left arm. This statement prompted concern on the part of Burlington's hiring officer. To provide further medical information, Mr. Freeman consulted with his orthopedist, took a grip-strength test, and obtained the orthopedist's written opinion that he was "able to pursue any type of employment that he so desires including . . . . hanging from the side of railroad cars," with no medical restrictions. *Id.* at 232. Nevertheless, Dr. Jarrard,

a Burlington medical officer, conducted his own review of the medical records. He decided that Mr. Freeman had a weakness in his left arm and diminished grip strength in his left hand, a medical condition that "creates a significant risk that a serious or potentially fatal accident may occur" while hanging from "the side of moving train cars using only one arm for support." *Id.* at 224. Dr. Jarrard therefore concluded that Mr. Freeman was not qualified for the conductor-trainee position or any other train-service job, which all require hanging from a moving train.

Mr. Freeman filed an EEOC charge alleging disability discrimination on the part of Burlington. The EEOC found reasonable cause to believe that an ADA violation had occurred and pursued Mr. Freeman's claim in this lawsuit. The parties' filings narrowed the issue to whether Burlington violated the ADA by regarding Mr. Freeman as an individual with a physical impairment. *Id.* at 25.[1] The parties conducted limited discovery and, on Burlington's motion for summary judgment, they "fully briefed this issue" and compiled "an extensive record." *Burlington N. & Santa Fe Ry. Co.*, 406 F. Supp. 2d at 1230.

II.

In evaluating the EEOC's claim, the district court applied the well-established framework recently summarized in *EEOC v. Heartway Corp.*,

---

[1] Neither of the parties argued that the perceived weakness amounted to an actual disability.

Nos. 05-7011 & 05-7016, 2006 WL 3030562 (10th Cir. Oct. 26, 2006). A claim under the ADA requires the EEOC "to prove, *inter alia*, that [plaintiff] had a disability." *Id.* at *3. "The ADA broadly defines 'disability'" to include "being regarded as having . . . an impairment" that substantially limits one or more of an individual's major life activities." *Id.* (quoting 42 U.S.C. § 12102(2)). As in *Heartway*, "[t]he only major life activity at issue in this case is the activity of working." *Id.* at *3. A claim that the employer regarded a plaintiff as substantially limited in the major life activity of working "'takes a plaintiff to the farthest reaches of the ADA.'" *Id.* at *4 (quoting *Ross v. Campbell Soup Co.*, 237 F.3d 701, 709 (6th Cir. 2001)). The required evidentiary showing is "particularly difficult," but not "insurmountable." *Id.* at *4, *5.

"The applicable EEOC regulations specify that the 'regarded as' standard may be met when a person '[h]as a physical or mental impairment that does not substantially limit major life activities but is treated by a covered entity as constituting such limitation.'" *Id.* at *3 (quoting 29 C.F.R. § 1630.2(l)).

> "[W]ith respect to the major life activity of working,' [t]he term "substantially limit[ed]" means significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working.

*Id.* at *3-*4 (quoting § 1630.2(j)(3)(i)).

A determination of the employer's perception "is strongly subjective, [but] the question of *what constitutes* a 'class of jobs'" presents "an objective question." *Id.* at *5. "[T]here need not be evidence that the employer knew or believed that the group of jobs from which the employer viewed the employee as restricted constituted (or included) a 'class of jobs.'" *Id.*

In addressing the meaning of "class of jobs" under the ADA, the Supreme Court has explained:

> To be substantially limited in the major life activity of working, . . . [an employee] must be precluded from more than one type of job, a specialized job, or a particular job of choice. If jobs utilizing an individual's skills (but perhaps not his or her unique talents) are available, one is not precluded from a substantial class of jobs. Similarly, if a host of different types of jobs are available, one is not precluded from a broad range of jobs.

*Sutton v United Air Lines, Inc.*, 527 U.S. 471, 492 (1999). In like fashion, the EEOC regulations define the term "as '[t]he job from which the individual has been disqualified because of an impairment, and the number and types of jobs utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the individual is also disqualified because of the impairment.'" *Heartway Corp.*, 2006 WL 3030562, at *5 (quoting 29 C.F.R. § 1630.2(j)(3)(ii)(B)) (further quotations omitted). Although not an "onerous evidentiary showing," the plaintiff must "relate the characteristics of the 'class' . . . of jobs to the performance-restricting consequences of [his] perceived impairment." *Id.* at *6 (citing 29 C.F.R. § 1630.2(j)(3)(II)(B) & (C)).

To prevail on its claim, the EEOC was required to demonstrate that Burlington viewed the perceived left-arm and grip-strength weakness as significantly restricting Mr. Freeman's ability to perform a class of jobs.[2] More particularly, the issue before the district court on summary judgment was whether the EEOC's evidence would have allowed a reasonable jury to conclude that "Burlington's decision regarding [Mr.] Freeman applies to a 'class of jobs.'" *Burlington N. & Santa Fe Ry. Co.*, 406 F. Supp. 2d at 1233.

## III.

Mr. Freeman applied for one job, that of conductor trainee. This is a position in the Burlington job category of train service, which also includes conductor, brakeman, switchman/switch foreman, and hostler. All these positions involve holding onto the grab bar or ladder on the exterior of a moving train as a job requirement.

In the district court, the EEOC argued that Burlington regarded Mr. Freeman as disqualified from train service jobs and also a number of other positions which sometimes necessitate climbing onto a train, grabbing with one hand, or riding on the exterior of the train. According to the EEOC, adding these positions together meant that "fully 93 percent of all [Burlington] jobs are unattainable by [Mr.] Freeman." Jt. App. at 154. The district court, however,

_____

[2] Although the EEOC asserted in the district court that Burlington regarded Mr. Freeman as disqualified from performing a broad range of jobs in various classes, it does not advance that argument on appeal. Aplt. Br., 14 at n.3.

rejected the EEOC's attempt to broaden the class because none of the other jobs expressly required the ability to hold onto the exterior of a moving train.

And the district court concluded that, standing alone, "the category of train service [did not] constitute a class of jobs as that term is defined by the ADA." *Burlington N. & Santa Fe Ry. Co.*, 406 F. Supp. 2d at 1237. Synthesizing ADA case law, the district court observed that "where an individual cannot perform a specific required task in a particular position or positions but can perform other tasks, he is not considered excluded from a 'class of jobs.'" *Id.* at 1235. *See also Murphy v. United Parcel Serv.*, 527 U.S. 516, 524 (1999) (mechanic's inability to obtain certification to drive commercial vehicles did not amount to a showing that employer regarded him as being unable to perform a class of mechanic jobs); *Rakity v. Dillon Cos.*, 302 F.3d 1152, 1164 (10th Cir. 2002) (employer's belief that plaintiff could not perform heavy lifting did not amount to a showing that employer regarded him as unable to perform a broad class of grocery clerk jobs); *Sorensen v. Univ. of Utah Hosp.*, 194 F.3d 1084, 1089 (10th Cir. 1999) (flight nurse disqualified following a MS diagnosis but allowed to perform regular nursing jobs did not establish she was precluded from a substantial class of jobs); *MacDonald v. Delta Air Lines, Inc.*, 94 F.3d 1437, 1445 (10th Cir. 1996) (position requiring an aircraft mechanic to taxi aircraft as is "a single, particular job," not "a class of jobs" ). In sum, the record lacked evidence that Burlington

perceived Mr. Freeman as ineligible for a "class of jobs," as the term is used in the ADA.

## IV.

On appeal, the EEOC has shifted its theory on the composition of class of jobs. It now points out that Burlington's labor agreement provides that train service is a prerequisite to a position in engine service, a category that includes the jobs of engineer, engine foreman, fireman, and yardmaster.[3] These jobs, the EEOC argues, should be tallied with train-service positions to show that Mr. Freeman was disqualified from 47% of jobs held by Burlington's workforce. It adds that the proposed class corresponds to a recognized occupational classification.

"We consider each case individually in determining whether to exercise our discretion to consider a question raised for the first time on appeal. Such determination must begin with recognition that sound policy supports the proposition that an appellate court will not consider an issue raised for the first

---

[3]    We note, as did the district court, the record does not demonstrate that engine service requires the physical abilities of train service and it does show that train service requires additional training, knowledge, and skills. *Burlington N. & Santa Fe Ry.*, 406 F. Supp. 2d at 1231, n.2. During agency proceedings, however, "Burlington included [engineer] in the train service category because the collective bargaining agreement . . . specifies that the position . . . is the final step in a progression which requires that, to be eligible for training as a[n] . . . engineer, an individual must have held the positions of Conductor Trainee/Conduct or Brakeman/Switchman." *Burlington N. & Santa Fe Ry.*, 406 F. Supp. 2d at 1231, n.2.

time on appeal." *Gorman v. Carpenters' & Millwrights' Health Benefit Trust Fund*, 410 F.3d 1194, 1202 (10th Cir. 2005) (quotation omitted). "This rule is particularly apt when dealing with an appeal from a grant of summary judgment, because the material facts are not in dispute and the trial judge considers only opposing legal theories." *Id.* (quotation omitted).

The EEOC contends that it sufficiently preserved its appellate argument that the engine-service positions in line of progression with train-service jobs should be included in the proposed class of jobs. We have reviewed the EEOC's district court briefs, along with its expert report and appended exhibits without encountering this contention. We decline to consider the EEOC's new theory on appeal.[4] We AFFIRM.

Entered for the Court


Wade Brorby
Circuit Judge

---

[4] We do note, however, that the EEOC's appellate brief provides no statutory, regulatory, or case law supporting its proposition that all jobs in a career progression should be included in a class of jobs for purposes of an ADA analysis. The EEOC's argument is inconsistent with the need to show that the proposed class includes only "'jobs utilizing similar training, knowledge, skills or abilities.'" *Heartway Corp.*, 2006 WL 3030562, at *5 (quoting 29 C.F.R. § 1630.2(j)(3)(ii)(B)).