[816 NYS2d 455]

In the Matter of MAYANK MUNSIFF, Respondent, v OFFICE OF COURT ADMINISTRATION, Appellant.

First Department, June 8, 2006

### APPEARANCES OF COUNSEL

*Michael Colodner*, New York City (*Shawn Kerby* and *John Eiseman* of counsel), for appellant.

*Bazelon Center for Mental Health Law*, Washington, DC (*Jennifer Mathis*, of the District of Columbia Bar, admitted pro hac vice of counsel), and *New York Lawyers* for the Public Interest, New York City (*John A. Gresham* of counsel), for respondent.

### OPINION OF THE COURT

SULLIVAN, J.P.

This is an appeal by the Office of Court Administration (OCA) from an order granting a CPLR article 78 petition and directing OCA to provide petitioner, an attorney with a lengthy criminal history that includes instances of violent and dishonest behavior, with a secure pass—a photo identification card—to enter New York State courthouses without passing through a magnetometer. In seeking article 78 relief, petitioner claimed that the denial of such a pass violated the New York State Human Rights Law (NYSHRL) (Executive Law art 15) and the Americans with Disabilities Act of 1990 (ADA) (42 USC § 12101 *et seq.*). Supreme Court granted the petition, determining that petitioner's criminal history was caused "solely by his mental disability," i.e., an "untreated paranoid schizophrenia," as claimed, and thus the denial of his application for a secure pass violated the ADA (4 Misc 3d 1022[A], 2004 NY Slip Op 50991[U], at *6, *2).

Attorneys applying for a secure pass must consent to a criminal history search. If the search does not reveal a criminal history, the pass is issued. If, however, the search reveals any criminal history, including vehicle and traffic violations, the application is submitted to the Chief Administrative Judge for review. If the criminal history shows violations, arrests or convictions for minor offenses that do not reflect a propensity

for violence or dishonesty, the application is approved. If, however, the criminal history reveals more serious offenses, the application is referred to the Inspector General for further investigation into the underlying facts and circumstances. If the underlying facts show violence or dishonesty, the applicant is deemed a security risk to the courthouse and the application is denied. Under such circumstances, the attorney can still, of course, enter the courthouse by passing through the magnetometer.

After the criminal history search conducted in connection with petitioner's application for a secure pass revealed a criminal record—including offenses involving violence and dishonesty—dating back to 1986, the matter was referred to OCA's Inspector General, whose investigation revealed 17 arrests for, inter alia, robbery, assault, coercion, forgery (of the signature of two judges on court orders), criminal trespass and theft of services. In response to a request by the Inspector General, petitioner submitted a list detailing his arrests and convictions. The list was accompanied by the following statement:

> "Despite the following information, all of which was disclosed to the Committee on Character and Fitness and the Justices of the Appellate Division, Second Department, I was admitted to the New York State bar. The Court agreed that everything in my record was due to previously untreated mental illness from which I have recovered and remain in remission."

As a result of his criminal history, petitioner's application was denied.

Petitioner appealed the denial to OCA, which, after review, agreed with the initial denial. In support of his appeal, in a submission mailed after the date of the letter of denial after review, but before petitioner's attorney received the letter so advising him, petitioner included a report from Dr. Rhea Parandelis, who had treated him at the Bellevue Outpatient Psychiatric Clinic since July 2002. She agreed with the diagnosis of chronic paranoid schizophrenia but stated that petitioner was in remission without any evidence of delusions or hallucinations. Expressing the opinion that petitioner "does not represent a risk to the safety of himself or others at this time or in any recent years," she stated, "This patient has had no criminal activity to my knowledge other than that during his acute psychotic episode, which as stated has been

in remission for many years." Petitioner also submitted a letter from Dr. Peter Sass, a psychiatrist who had treated petitioner from 1994 to 1996 and who had testified before the Committee on Character and Fitness. Dr. Sass, who believed that petitioner, when taking his medication, remained in complete remission from his psychiatric disorder, stated that petitioner posed no threat and "has no character disorder which would interfere with his work as an attorney." Dr. Sass opined that "[f]rom a psychiatric perspective, it does not make sense to restrict [petitioner's] entrance into courthouses relative to any other attorney." Petitioner also submitted the medical information and reports that had been submitted to the Committee on Character and Fitness. His doctors agreed that petitioner's criminal activity was related to his untreated schizophrenia and that he was fit to practice law. OCA did not respond to this tardy submission.

Petitioner then commenced this article 78 proceeding supported by his own affidavit attesting to his faithful adherence to the prescribed drug regimen for the continued control of the symptoms he experienced at the time of his criminal conduct 10 years before. It was also supported by the medical records reflecting the 1992 diagnosis of schizophrenia, which were neither attached to his secure pass application nor part of the record prior to the determination of his administrative appeal. Supreme Court denied the petition insofar as it sought relief under the NYSHRL but found that petitioner was mentally disabled under the ADA since, absent his ongoing treatment and medication, he would be unable to work. The court noted that while petitioner can now work, the definition of disability includes having a "record of such impairment" (2004 NY Slip Op 50991[U], at *5). The court held that petitioner's right to a secure pass depends on whether he has a disability and meets the essential eligibility requirements, and concluded that petitioner satisfied both criteria. We reverse.

Petitioner's claim that OCA's determination must be overturned because it violated state and federal law and is therefore arbitrary and capricious and contrary to law (CPLR 7803 [3]) is meritless and the petition should have been dismissed. Title II of the ADA, the terms of which control petitioner's claim, provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a

public entity" (42 USC § 12132). Thus, to be entitled to ADA protection, petitioner must show that he is a "qualified individual with a disability" within the meaning of the ADA (*id.*; *Phillips v Union Pac. R.R. Co.*, 216 F3d 703, 707 [8th Cir 2000]). Such a person is one who, "with or without reasonable modifications to rules, policies, or practices . . . meets the essential eligibility requirements for . . . participation in programs . . . provided by a public entity" (42 USC § 12131 [2]).

We are in agreement with Supreme Court's statement that petitioner's "right to a Secure Pass depends on two tests, whether he has a disability and whether he meets the essential eligibility requirements" (2004 NY Slip Op 50991[U], at *5). While petitioner does not currently have a disability since the medication he takes and treatment he receives have put his schizophrenia in remission (*see Sutton v United Air Lines, Inc.*, 527 US 471, 488 [1999]; *Murphy v United Parcel Service, Inc.*, 527 US 516, 521 [1999]), he, as Supreme Court correctly found, has a "record of such impairment" and thus fits within the statutory definition (42 USC § 12102 [2] [B]). We disagree, however, with Supreme Court's conclusion that petitioner meets the essential eligibility requirements. Without addressing the question analytically, Supreme Court merely concluded that this test is "satisfied by the record which shows that [petitioner] will not in the future by reason of his disability pose a threat to the security of a [c]ourthouse" (2004 NY Slip Op 50991[U], at *6). "[W]hen making the determination of whether an individual with a disability meets the 'essential eligibility requirements' for a given program or activity, a public entity may properly consider whether an applicant with a disability poses a direct threat to the health and safety of others" (*Clarkson v Iowa Dept. of Transp.*, 2005 WL 1417112, *10, 2005 US Dist LEXIS 37890, *31 [ND Iowa]). Here, OCA has concluded that petitioner poses such a threat; it has determined that "[w]here the underlying facts and circumstances . . . reflect[ ] violence or dishonesty [the] applicant [is] deemed a risk to the security of the courthouse." It can hardly be denied that the underlying facts and circumstances of petitioner's case reflect violence and dishonesty.

Inasmuch as OCA has reasonably determined that since an applicant with a criminal history of violence and dishonesty is, by virtue of that single circumstance, deemed a security risk, the absence of such history is the sine qua non for the issuance

of a secure pass. It is not for the courts to decide otherwise. With his lengthy criminal history of such offenses—albeit in the past—petitioner cannot satisfy this requirement.* OCA is not required to compromise its essential eligibility criteria for the secure pass program (*see Tennessee v Lane*, 541 US 509, 531-532 [2004]).

Nor, in any event, contrary to Supreme Court's determination, can petitioner show that he "will not in the future" pose a threat to courthouse security. While his paranoid schizophrenia is in remission, with an excellent long-term prognosis as long as he remains compliant with his medication and therapy regimen, he still has the condition—undisputedly a chronic one—and there is always a possibility that his symptoms will recur. In that regard, no individualized assessment of a person's psychiatric condition can determine whether the person will stay on medication and continue treatment or, indeed, whether the medication regimen will continue its effectiveness. The psychiatric opinions relied upon by petitioner and, in turn, Supreme Court are based on the assumption that petitioner will stay on his medication and continue his treatment. Since petitioner is not under constant care and confinement, the risk that he will not continue taking his medication or continue in his treatment is, in the context of courthouse security, unacceptable and unreasonable.

Moreover, a court's exclusive reliance on these optimistic psychiatric assessments in reaching its judgment constitutes an abdication of judicial responsibility (*see Matter of John A. v Bridget M.*, 16 AD3d 324, 332 [2005], *lv denied* 5 NY3d 710 [2005]). It would certainly be irresponsible for OCA to base its determination on such assessments. Nor should we require OCA to provide for continuing oversight by requiring ongoing assurances from a neutral psychiatrist that the secure pass holder is adhering to his regimen in taking medications, keeping medical appointments and not presenting an appreciable risk of recurrence of the disability in remission. This is too formidable a burden to be a realistic counterbalance to the risk involved.

---

* Petitioner cannot claim that waiver of the requirement that an applicant be free of criminal history constitutes a "reasonable modification" of OCA's criteria for issuance of a secure pass, since such a waiver would be a "fundamental alteration to the purpose" of OCA's program (*Washington v Indiana High School Athletic Assn., Inc.*, 181 F3d 840, 850 [7th Cir 1999], *cert denied* 528 US 1046 [1999]).

Petitioner presses the argument that in admitting him to the bar the Second Department necessarily found that his criminal record was due to his untreated mental illness, now in remission. We note that in recommending petitioner's admission, the Committee on Character and Fitness determined that he presently had the requisite character and fitness for the practice of law (*see Matter of Anonymous*, 19 AD3d 867 [2005]; Judiciary Law § 90 [1] [a]). While a history of mental illness does not preclude admission to the bar (*see Matter of Rowe*, 73 NY2d 336 [1989]), since the relevant inquiry is not the applicant's history but whether he presently meets the requirements of character and fitness, it can hardly be contended that a history of violence and dishonesty—whatever its causation—is not dispositive of the assessment of whether an individual poses a security risk to the courthouse.

In view of our determination that petitioner is not a "qualified individual with a disability" because he fails to meet the "essential eligibility requirement[ ]" for participation in the secure pass program (42 USC § 12131 [2]), we need not reach the question whether he was excluded from the program "by reason of" his disability (§ 12132) or whether he has a criminal record solely because of his disability.

Finally, we note that a grant of this petition would contravene the purpose of the ADA "to place those with disabilities on an equal footing, not to give them an unfair advantage" (*Kornblau v Dade County*, 86 F3d 193, 194 [11th Cir 1996]). If petitioner's claim—that his extensive criminal record of violent and dishonest conduct was based on his disability and should therefore not be a factor in considering his application for a secure pass—were accepted, petitioner would be advantaged over persons similarly situated with a criminal record but without a disability.

Accordingly, the judgment (denominated an order) of the Supreme Court, New York County (Lewis Bart Stone, J.), entered July 8, 2004, which granted the petition brought pursuant to CPLR article 78 to vacate respondent's determination denying petitioner a secure pass to court buildings and directed respondent to issue such pass to petitioner, should be reversed, on the law, without costs or disbursements, the petition denied, respondent's determination confirmed and the proceeding dismissed.

WILLIAMS, GONZALEZ and MALONE, JJ., concur.

Judgment (denominated an order), Supreme Court, New York County, entered July 8, 2004, reversed, on the law, without costs or disbursements, the petition denied, respondent's determination confirmed and the proceeding dismissed.